No. 23-11714-H

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

**RONALD RUBIN,**
*Appellant-Defendant,*

v.

**KIMBERLY GRIPPA**
*Appellee-Plaintiff.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

**4:20-cv-00457-MW-MAF**

_____

**BRIEF FOR APPELLANT RONALD RUBIN**

_____

James L. Kauffman
Bailey & Glasser LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
E-mail: jkauffman@baileyglasser.com

COUNSEL FOR APPELLANT-DEFENDANT

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Eleventh Circuit Local Rule 26.1-1(a) requires the appellant to file a Certificate of Interested Persons and Corporate Disclosure Statement within every motion, petition, brief, answer, response, and reply filed. All trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations known to have an interest in the outcome of this case or appeal are:

- Bailey & Glasser, LLP
- Grippa, Kimberly
- Hodkin, Adam Jay, Esq.
- Hodkin Stage Ward PLLC
- Kauffman, James, Esq.
- Mattox Law Firm
- Mattox, Marie, Esq.
- Rubin, Ronald
- Snyder, Eric, Esq.
- Walker, Mark, District Judge

*/s/ James L. Kauffman*
James L. Kauffman
*Counsel for Defendant-Appellant*

i

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Eleventh Circuit Rule 28-1(c), Appellant Ronald Rubin respectfully submits that oral argument will aid the Court in resolving this appeal.

This appeal presents important questions of First Impression concerning whether Florida's litigation privilege protects a party to litigation from a claim of defamation by implication arising from statements sent by an attorney that were in furtherance of the litigation and not defamatory without reference to an absolutely privileged, filed complaint; and whether an attorney's client is the proper defendant in a suit arising from the attorney's statements made in the course of the client's representation. These are important, novel questions, and a robust discussion of the issues at oral argument will significantly aid the Court in its decisional process in this appeal. Moreover, oral argument would allow the Court to clarify its understanding of the facts and explore Appellant Rubin's contentions in greater detail during its consideration of this appeal.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ........................................................ i

TABLE OF CITATIONS ................................................................v

STATEMENT OF JURISDICTION................................................1

STATEMENT OF THE ISSUES...................................................3

INTRODUCTION .........................................................................4

STATEMENT OF THE CASE.......................................................6

    A.    Statement of the Facts .........................................................6

    B.    Procedural History............................................................9

    C.    Standard of Review ........................................................12

SUMMARY OF ARGUMENT ...................................................13

ARGUMENT ..............................................................................15

I.    Florida's absolute and qualified litigation privilege applies to and
protects the allegedly defamatory statements...............................15

    A.    Florida's absolute litigation privilege applies to the allegations in the
Mitchell Complaint and to the statements in the Tein Letters. ...........18

    B.    Florida's qualified litigation privilege applies to and protects the
allegedly defamatory statements in the Tein Letters. ........................24

        1.    Florida's qualified litigation privilege applies to allegedly
defamatory statements made relevant or pertinent to the
subject of the inquiry in an underlying lawsuit. .......................25

        2.    The district court erred in finding that the qualified
litigation privilege does not protect the allegedly
defamatory statements in the Tein Letters.................................32

        3.    The district court erred in finding that a genuine dispute of
material fact exists regarding whether Grippa can prove
express malice because there is no evidence that Rubin
wrote the Tein Letters primarily to injure Grippa's
reputation. .............................................................................35

iii

II.   Rubin is not liable in a defamation lawsuit arising from his attorney's statements made while representing Rubin. ....................................................39

CONCLUSION ..........................................................................................43

CERTIFICATE OF COMPLIANCE....................................................................44

CERTIFICATE OF SERVICE ............................................................................45

## TABLE OF CITATIONS

Page(s)

**Cases**

*AGM Invs., LLC v. Bus. L. Grp., P.A.*,
  219 So. 3d 920 (Fla. 2d DCA 2017) ...................................................41

*Arko Plumbing Corp. v. Rudd*,
  230 So. 3d 520 (Fla. 3d DCA 2017) ...................................................31

*Ball v. D'Lites Enterprises, Inc.*,
  65 So. 3d 637 (Fla. 4th DCA 2011) ....................................................21

*Cherdak v. Cottone*,
  No. 2:22-CV-634-SPC-NPM, 2023 WL 2044608 (M.D. Fla. Feb.
  16, 2023) ......................................................................................20, 21

*Chestnut Assoc., Inc. v. Assurance Co. of Am.*,
  17 F. Supp. 3d 1203 (M.D. Fla. 2014)................................................40

*DelMonico v. Traynor*,
  116 So. 3d 1205 (Fla. 2013) .....................................................*passim*

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*,
  950 So. 2d 380 (Fla. 2007) ...................................................19, 41, 42

*Ferrer v. Bayview Loan Servicing, LLC*,
  No. 15-20877-CIV, 2015 WL 13816225 (S.D. Fla. Aug. 24, 2015 ..................41

*Fullerton v. Fla. Med. Ass'n, Inc.*,
  938 So. 2d 587 (Fla. 1st DCA 2006) ..................................................16

*Gandy v. Trans World Comput. Tech. Grp.*,
  787 So. 2d 116 (Fla. 2d DCA 2001) ...................................................20

*Gonzalez v. Porter*,
  No. 23-20356-CIV, 2023 WL 2923601 (S.D. Fla. Apr. 13, 2023) ...................31

*Hardigree v. Lofton*,
  992 F.3d 1216 (11th Cir. 2021) ..........................................................12

*Helena Chemical Co. v. Uribe*,
   281 P.3d 237 -NMSC- 021, ¶ 32 (N.M. 2012) .................................................24

*Hope v. Nat'l All. of Postal & Fed. Emps., Jacksonville Loc. No. 320*,
   649 So.2d 897 (Fla. 1st DCA 1995) ...................................................19

*Jackson v. BellSouth Telecomms.*,
   372 F.3d 1250 (11th Cir. 2004) .........................................................16

*Jews For Jesus, Inc. v. Rapp*,
   997 So. 2d 1098 (Fla. 2008) ..............................................................22

*LatAm Invs., LLC v. Holland & Knight, LLP*,
   88 So. 3d 240 (Fla. 3d DCA 2011)....................................................41

*Leonard v. Wilson*,
   8 So. 2d 12 (Fla. 1942) ......................................................................22

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v.
   United States Fire Ins. Co.*,
   639 So. 2d 606 (Fla. 1994) ............................................18, 27, 31, 41

*Lugo v. State*,
   845 So. 2d 74 (Fla. 2003) ..................................................................33

*Myers v. Hodges*,
   44 So. 357 (Fla. 1907) ................................................................*passim*

*Nodar v. Galbreath*,
   462 So. 2d 803 (Fla. 1984) ................................................................13

*Pace v. Bank of New York Mellon Tr. Co. Nat'l Ass'n*,
   224 So. 3d 342 (Fla. 5th DCA 2017)..................................................31

*Perez v. Nuereaus Inv. Grp. No. II, LLC*,
   No. 9-cv-20784, 2009 WL 1973476 (S.D. Fla. July 8, 2009) ...........42

*Pomfret v. Atkinson*,
   137 So. 3d 1161 (Fla. 4th DCA 2014).........................................*passim*

*Skop v. City of Atlanta*,
   485 F.3d 1130 (11th Cir. 2007) .........................................................13

*Stewart v. Sun Sentinel Co.*,
  695 So. 2d 360 (Fla. 4th DCA 1997) ...................................................21

*Stucchio v. Tincher*,
  726 So. 2d 372 (Fla. 5th DCA 1999) ..................................................18

*Thomas v. Tampa Bay Downs, Inc.*,
  761 So. 2d 401 (Fla. 2d Dist. 2000) ...................................................27

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018) ..........................................................13

*Wilmington Tr., N.A. v. Est. of Gonzalez*,
  No. 1:15-CV-23370-UU, 2015 WL 13847162 (S.D. Fla. Dec. 22,
  2015) ...........................................................................................24, 26

## Statutes

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1332 ........................................................................................1

Fla. Stat. § 14.32 ......................................................................................36

Fla. Stat. § 775.082(4)(a) .........................................................................40

Fla. Stat. § 836.01 ....................................................................................40

## Rules

Fed. R. App. P. 32(a)(5) ...........................................................................45

Fed. R. App. P. 32(a)(6) ...........................................................................45

Fed. R. App. P. 32(a)(7)(B) ......................................................................45

Fed. R. App. P. 32(f) ................................................................................45

Fed. R. Civ. P. 56(a) ................................................................................12

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ..................................................28

Merriam-Webster, https://www.merriam-
   webster.com/dictionary/connection ..................................................................28

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and the parties are citizens of different states. Doc. No. 1.[1] This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from the district court's denial of Appellant-Defendant Ronald Rubin's motion for summary judgment based on Florida's litigation privilege.[2]

The district court entered the first of the challenged orders when it denied Rubin's motion for summary judgment on March 22, 2023. Doc. No. 135. Rubin filed a motion to extend the time to file his Notice of Appeal on April 13, 2023. Doc. No. 139. The district court granted the motion the same day, extending the deadline to May 22, 2023. Doc. No. 140. Rubin filed his Notice of Appeal with the clerk of the district court on May 22, 2023. Doc. No. 148. On June 23, 2023, Rubin amended his Notice of Appeal to include his appeal from the district court's order terminating his motion for reconsideration, entered on May 24, 2023, as well as the district

_____

[1] Citiations to "Doc. No." refer to the documents in Rubin's Appendix, which retains the assigned document numbers from the CM/ECF system.

[2] On June 9, 2023, this Court ordered the parties to file answers to its jurisdictional questions. Appellant-Defendant Ronald Rubin submitted his jurisdictional briefing on June 23, 2023, explaining that because the district court's decision absolutely denies him the immunity conferred by Florida's litigation privilege and is effectively unreviewable on appeal post-trial, this Court should find that the issue is immediately appealable under the collateral order doctrine.

1

court's order denying his motion for an indicative ruling, entered on June 6, 2023.

Doc. Nos. 151, 155.

## <u>STATEMENT OF THE ISSUES</u>

I.     Whether Florida's absolute or qualified litigation privilege protects a client against a claim of defamation by implication arising from statements sent by the client's attorney that are not defamatory without reference to an absolutely privileged, publicly filed complaint; and

II.    Whether an attorney's client is the proper defendant or can be vicariously liable in a defamation suit arising from the attorney's statements made in the course of the client's representation.

## **INTRODUCTION**

This case arises from Appellee Kimberly Grippa's claim that two letters Appellant Ronald Rubin's former attorney, Michael Tein, sent to Florida state officials on behalf of Rubin contained statements that defamed her by implication. In the letters, Tein explained the subject matter of a civil lawsuit he filed for Rubin, attached the filed complaint, and requested the recipient officials' aid in the ongoing investigation that was the subject of the lawsuit, without naming Grippa. Grippa's name and the allegations that allegedly defame her appear only in the publicly filed civil complaint attached to the letters, which is a document that the district court recognized is absolutely privileged under Florida law. Doc. Nos. 135 at 5 n.1; 22 at 7–9. While Florida law and Eleventh Circuit precedent support that these statements are subject to Florida's litigation privilege, which would shield Rubin from liability for statements his attorney made relevant to ongoing litigation, the district court denied Rubin's motions for summary judgment, reconsideration, and indicative ruling. This appeal is the final avenue for Rubin to avoid a trial and thereby retain any semblance of the protection of the litigation privilege, to which he is entitled.

The Court should find that Florida's absolute or qualified litigation privilege protects the allegedly defamatory statements in Tein's Letters. First, absolute privilege protects the statements because they merely reference or repeat the allegations contained in the Mitchell Complaint, which are absolutely privileged

4

themselves. Reference to the allegations in a filed complaint does not remove the absolute privilege from those statements, and the district court erred by finding defamation can occur by repeating a complaint's allegations or by simply "directing" or "encouraging" a recipient to read a complaint.

Second, even if this Court finds that the absolute privilege does not protect the allegedly defamatory statements in the Tein Letters, Tein sent the letters relevant to and in furtherance of a related, ongoing judicial proceeding, and thus Florida's qualified litigation privilege protects the statements. The statements directly relayed the subject matter of the investigation and the resulting Mitchell lawsuit, the Florida officials whom Tein chose as the recipients of the letters played integral roles in the investigation, and Tein's request for the officials' aid in the DFS investigation would also bolster discovery for Rubin's civil lawsuit.

Because the qualified privilege applies to the statements in the Tein Letters, Grippa may overcome the privilege only by showing by the preponderance of the evidence that Rubin made the statements in the letters with express malice toward her. Express malice requires a threshold showing that the tortfeasor made the allegedly defamatory statements with the *primary motive* of causing injury to Grippa's reputation. Fatal to her claim, and contrary to the district court's decision, there are no facts Grippa can point to in the letters or otherwise in the record that would support a reasonable jury's finding that the letters were written with the

primary motive of causing injury to Grippa's reputation, as the primary purpose of seeking the recipient officials' aid in the investigation is obvious from the letters themselves.

Moreover, Grippa's theory of defamation only lies against Tein, not Rubin. Rubin had no part in drafting the letters, and Grippa cannot impute any malice therein to Rubin through his attorney who solely authored, signed, and sent the letters. Further, this Court should not allow Grippa to take Rubin to trial on a theory of defamation that relies on an attorney committing a tort on behalf of his client.

For these reasons, this Court should reverse the district court and grant Rubin's motion for summary judgment based on Florida's absolute or qualified litigation privilege.

## <u>STATEMENT OF THE CASE</u>

### A. Statement of the Facts

The material facts are not in dispute. This case involves a single count of defamation based on two letters that Appellant-Defendant Ronald Rubin's ("Rubin's") former counsel, Michael Tein ("Tein") sent to Florida Governor Ron DeSantis and Inspector General Miranda Miguel via e-mail. Plaintiff Kimberly Grippa ("Grippa") is not named in the letters—instead, her identity and involvement are only discernable by reading up to the eighth page of allegations in Rubin's civil complaint filed in Florida state court against lobbyist R. Paul Mitchell ("Mitchell"),

6

which was hyperlinked in the Tein Letters (the "Mitchell Complaint"). *See* Doc. No. 124-13 at 10. The letters requested assistance in an ongoing Florida Department of Financial Services ("DFS") investigation of Rubin (the "DFS investigation") and requested an investigation into a potential misuse of public office by Florida's Chief Financial Officer, Jimmy Patronis ("Patronis"). Doc. Nos. 109-3, 109-4.

On or about June 10, 2019, Rubin hired Tein to represent him in an ongoing DFS investigation concerning allegations made against Rubin while he was Commissioner of the Florida Office of Financial Regulation ("OFR"). Doc. No. 109-1. At the same time, Rubin also hired Tein to represent him in a potential civil claim against Mitchell for Mitchell's causing and interfering with the DFS investigation. *Id.* Rubin, like any other client, relied upon Tein to exercise his own professional judgment in performing those tasks that Tein deemed necessary in connection with his representation of Rubin. *Id.*

On June 21, 2019, Tein filed the Mitchell lawsuit (Case Number 2019-CA-002535) in the Circuit Court in and for Miami-Dade County, Florida, alleging that Mitchell and Grippa, among others, were involved in a pay-to-play scheme in Patronis's office that had tainted the DFS investigation. *See* Doc. No. 124-13 at 10. On the same day, Tein e-mailed letters (the "Tein Letters") to Governor DeSantis and Inspector General Miguel, requesting their intervention in the then-ongoing DFS investigation. Doc. No. 109-3, Doc. No. 109-4. Tein's Letter to DeSantis requested

"that you direct[] Florida's Chief Inspector General [Miguel] to assume jurisdiction over the pending investigation of OFR Commissioner Ron Rubin[] and to open an investigation into heavily corroborated evidence of misuse of public office by CFO Jimmy Patronis and his inner circle. . . ." Doc. No. 109-3 at 2. Tein's Letter to DeSantis continues to state, "In a lawsuit filed today, Mr. Rubin details improper, unethical, and perhaps unlawful conduct on the part of Mr. Patronis and his enterprise . . . ." Doc. No. 109-3 at 3. Tein's Letter to Inspector General Miguel repeats these same statements, requests that Inspector General Miguel assume jurisdiction over the DFS investigation, and states that "The grounds for our request are described in our letter to Governor DeSantis and a lawsuit (both hyperlinked and attached)." Doc. No. 109-4 at 2.

The Tein Letters recite and summarize the allegations in the Mitchell Complaint, as the same events described therein gave rise to both the filing of the Mitchell Complaint and the sending of the Tein Letters. *Compare* the Mitchell Complaint, Doc. No. 124-13 at 3, 8, 10, to the Tein Letters, Doc. Nos. 109-3, 109-4. Using the same terms as those in the Mitchell Complaint, the Tein Letters referred to an unnamed group of people as part of Patronis's "inner circle" and "his enterprise." *Id.*

Tein chose the letters' recipients based on their connection to the DFS Investigation. The letters were sent to: Governor DeSantis and General Miguel, who

had oversight and could intervene in the DFS investigation; Inspector General Bradley Perry, who purportedly was leading the DFS investigation at that time; and Attorney General Ashley Moody and Chief Financial Officer Jimmy Patronis, both of whom, like Governor DeSantis, were members of the Financial Services Commission, the body to which the DFS investigation report would be sent. Tein sent the Tein Letters on June 21, 2019, the same day he filed the Mitchell Complaint, and during the pendency of the DFS investigation into Rubin, which remained open until July 25, 2019. *See* Doc. No. 4-2.

Rubin was unaware of the Tein Letters prior to Tein sending them, and Rubin did not author, contribute, direct, or approve them. Doc. No. 109-1 ¶¶5–6.

### B. Procedural History

Grippa initially based her defamation claim on several communications—the Mitchell Complaint itself, Rubin's statement to DFS investigators, and the Tein Letters to DeSantis and Miguel. Doc. No. 22 at 5. In its Order on Rubin's motion to dismiss, the district court barred Grippa's arguments about alleged defamatory statements other than those in the Tein Letters, finding that certain of the statements were relevant to Rubin's claims in the Mitchell lawsuit and thus absolutely privileged. *Id.* at 8–9 ("Indeed, the lawsuit is entirely premised on the fact that the 'enterprise' engaged in criminal activity and sought to defame [Rubin]."). The

9

district court found that Rubin's own statements to investigators were Rubin's own subjective assessments and similarly unactionable by Grippa. *Id.* at 11–13.

As to Grippa's allegations regarding allegedly defamatory statements in the Tein Letters, the district court denied Rubin's motion to dismiss and, on March 22, 2023, denied Rubin's motion for summary judgment, which he had made in part based on the litigation privilege (the "Summary Judgment Order"). Doc. No. 135. The district court correctly observed that "[b]ased on the contents of the Tein Letters, their purpose was to convince [Florida Governor Ron] DeSantis and [Chief Inspector General Melinda] Miguel to intervene in" the DFS investigation of Rubin. Doc. No. 135 at 8 n.2. The district court recognized that the content of the Mitchell Complaint was absolutely privileged, such that Florida's absolute litigation privilege would protect the statements in the letters "if the Tein Letters [only] included the Mitchell Complaint as an attachment or simply referenced the existence of the Mitchell Lawsuit." Doc. Nos. 135 at 5 n.1, 6; 138. However, the district court then ruled that the statements in the Tein Letters are unprotected because "they (i) include a separate statement that alleges the existence of a criminal enterprise at DFS, whose members violated numerous Florida laws, and (ii) encourage the recipients to review the Mitchell Complaint, which specifically names Plaintiff as a member of that criminal enterprise." Doc. No. 135 at 6.

10

On April 4, 2023, Rubin moved the district court to reconsider its order to correct specific manifest errors of law or fact. Doc. No. 137. In response to that motion, the district court entered an order of clarification, Doc. No. 138, which explained that the court had inadvertently omitted wording from the Summary Judgment Order and directed the parties to file further briefing on Rubin's motion for reconsideration, which the parties submitted. *See* Doc. Nos. 141, 142. The district court then reserved ruling on the motion for reconsideration and ordered supplemental briefing, noting that "[Rubin]'s argument as to why this Court erred in its application of Florida's qualified privilege raises complex issues that cannot be resolved absent further briefing." Doc. No. 145 at 1; *see also* Doc. Nos. 146, 147.

The district court did not enter another order regarding Rubin's motion for reconsideration before the May 22, 2023, deadline it set to file his notice of appeal had passed, so Rubin filed the notice on May 22, 2023, to avoid losing his right to an interlocutory appeal. Doc. No. 148. After Rubin filed his notice of appeal, the district court terminated Rubin's motion to reconsider, finding that the motion was "not the type of motion that this Court retains jurisdiction over after a notice of appeal has been filed." Doc. No. 151 at 2. The district court also invited the parties to file motions for an indicative ruling. *Id.* at 4. Rubin moved for a ruling indicating that his motion to reconsider raises a substantial question or that the district court would grant his motion to reconsider if this Court remanded the case. Doc. No. 153.

The district court denied Rubin's motion for such a ruling, instead finding that it "would not grant Defendant's motion for reconsideration if the Eleventh Circuit remanded for that purpose." Doc. No. 155 at 4–5. The court noted that it had already stated it would not reconsider Rubin's arguments as to absolute privilege. *Id.* at 5. As to qualified privilege, the court found that Grippa "has shown a genuine dispute of material fact as to whether or not Defendant acted with express malice, making this issue a question for the jury to resolve at trial." *Id.* at 6.

On June 23, 2023, Rubin amended his notice of appeal to include his appeal from the order terminating his motion for reconsideration, Doc. No. 151, entered on May 24, 2023, and the order denying his motion for an indicative ruling, Doc No. 155, entered on June 6, 2023. Doc. No. 158.

### C. Standard of Review

This Court reviews a district court's grant or denial of summary judgment, including those based on privilege or immunity from suit, de novo. *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021) (citing *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views all evidence and makes all factual inferences in the light most favorable to the non-moving party, and all

12

reasonable doubts about the facts are resolved in favor of the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

"Whether the defendant's statements constitute defamation by implication is a question [of] law for the court to determine." *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018). Additionally, "[w]here the circumstances surrounding a defamatory communication are undisputed, or are so clear under the evidence as to be unquestionable, then the question of whether the occasion upon which they were spoken was privileged is a question of law to be decided by the court." *See Nodar v. Galbreath,* 462 So. 2d 803, 810 (Fla. 1984) (citing *Abraham v. Baldwin*, 42 So. 591 (Fla. 1906)).

## SUMMARY OF ARGUMENT

After the district court's denial of Rubin's privilege arguments, this Court should intervene to avoid Rubin standing trial on a defamation claim arising from statements that are unactionable under Florida law. This Court should reverse the district court's order denying Rubin summary judgment pursuant to Florida's litigation privilege.

The statements that Grippa specifically alleges are defamatory to her are solely in the Mitchell Complaint, as Grippa is not named in the Tein Letters—her name first appears on page eight of the Mitchell Complaint, attached to the letters via hyperlink. *See* Doc. No. 124-13 at 10. Allegations in legal pleadings are

13

absolutely protected by Florida's litigation privilege and are not actionable as a matter of law. *See DelMonico v. Traynor*, 116 So. 3d 1205, 1212 (Fla. 2013) ("[I]t is to the interest of the public that great freedom should be allowed in complaints and allegations with a view to have them inquired into; and that parties and counsel should be indulged with great latitude in the freedom of speech. . . ."). The district court erred by finding that the Tein Letters included defamatory statements beyond the allegations of the Mitchell Complaint, as the Tein Letters say no more than the allegations in the Mitchell Complaint. Further, a reader of the Tein Letters could only understand that Grippa was part of the "inner circle" or "enterprise" referenced in the Tein Letters by reading the Mitchell Complaint. The district court erred because there can be no claim for defamation by implication where the necessary context for the claim is only in a privileged complaint.

If this Court finds that the absolute litigation privilege does not protect the statements at issue, the qualified privilege should apply. *DelMonico* expanded Florida's qualified litigation privilege to protect defamatory statements in an attorney's communications made in connection with or in relation to the subject of inquiry in an underlying lawsuit such that the complainant must rebut the presumption of immunity with evidence of express malice. *Id.* at 1220. A plaintiff must "establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice—i.e., that the defendant's

primary motive in making the statements was the intent to injure the reputation of the plaintiff." *Id.* (quoting *Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992)).

Grippa cannot prove express malice to overcome the presumptive qualified litigation privilege. The district court itself noted that the primary purpose of the letters was not to defame Grippa, but to convince the recipients to intervene in the ongoing DFS investigation against Rubin or open another investigation. As such, Grippa cannot show, and no reasonable jury could find, by a preponderance of the evidence, that the primary motive of the Tein Letters was to harm her reputation.

Additionally, Rubin's former attorney Tein made the alleged defamatory statements, not Rubin. Rubin is not the proper defendant of Grippa's defamation claim because Grippa's theory of defamation lies only against Tein. Attorneys are bound by the Rules of Professional Responsibility when acting on behalf of their clients, and those rules expressly forbid an attorney from committing libel or defamation on his client's behalf. As Rubin's attorney, Tein could not defame Grippa within the scope of his representation, and therefore, Tein's allegedly tortious conduct is not imputable to Rubin.

## **ARGUMENT**

### **I. Florida's absolute and qualified litigation privilege applies to and protects the allegedly defamatory statements.**

In Florida, "[t]he law has long recognized that judges, counsel, parties and witnesses should be absolutely exempted from liability to an action for defamatory

15

words published in the course of judicial proceedings, regardless of how false or malicious the statements may be, as long as the statements bear some relation to or connection with the subject of inquiry." *DelMonico*, 116 So. 3d at 1211 (describing the litigation privilege). By virtue of Florida's litigation privilege, "[t]orts such as perjury, libel, slander, and other actions based on statements made in connection with a judicial proceeding are not actionable." *Fullerton v. Fla. Med. Ass'n, Inc.*, 938 So. 2d 587, 592 (Fla. 1st DCA 2006) (quoting *Fariello v. Gavin,* 873 So.2d 1243, 1245 (Fla. 5th DCA 2004)).

The Florida Supreme Court characterizes Florida's litigation privilege as more than a mere defense to liability—rather, the privilege confers immunity from suit to participants in litigation because "participants [in litigation must] be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *DelMonico*, 116 So. 3d at 1216 (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)). The Eleventh Circuit has agreed with both this holding and its underlying reasoning: "Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings. The privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been **extended to cover all acts related to and occurring within judicial proceedings**." *Jackson v. BellSouth Telecomms.*,

16

372 F.3d 1250, 1274–75 (11th Cir. 2004) (quoting *Levin*, 639 So. 2d at 607–08) (emphases added); *see also DelMonico*, 116 So. 3d at 1219 (alleged defamatory statements made *ex parte* and outside of court, but in connection with the subject of inquiry in an ongoing lawsuit, are protected by Florida's litigation privilege).

Under Florida law, the absolute litigation privilege protects statements made for the proper conduct of a judicial proceeding and relevant to the subject of inquiry in the proceeding. *Myers v. Hodges*, 44 So. 357, 362 (Fla. 1907); *see DelMonico*, 116 So. 3d at 1211. In *DelMonico*, the Florida Supreme Court clarified that in determining whether the qualified privilege protects allegedly defamatory statements made during an ongoing judicial proceeding, the only relevant inquiry in the first instance is whether the statement has "some relation to or connection with the subject of inquiry in the underlying lawsuit." *DelMonico*, 116 So. 3d at 1208. Florida jurisprudence on the qualified litigation privilege, as well as post-*DelMonico* cases applying that decision in the litigation context, support this conclusion.

Thus, as explained below, Tein's statements in the letters, made during the pendency of the Mitchell lawsuit and relating to the Mitchell lawsuit, cannot give rise to a defamation claim because they are absolutely or, at minimum, qualifiedly privileged. Even if the Court were to find that Tein's statements were not made in the "due course" of the proceeding, they were made relevant to and during the pendency of the Mitchell lawsuit, and Grippa cannot overcome the qualified

17

privilege by showing that the statements were made with the primary intent to injure her reputation—because they clearly were not.

### A. Florida's absolute litigation privilege applies to the allegations in the Mitchell Complaint and to the statements in the Tein Letters.

A brief review of Florida's litigation privilege is informative regarding *DelMonico*'s place therein. The Supreme Court of Florida established the absolute and the limited qualified litigation privileges in *Myers v. Hodges*, 44 So. 357 (Fla. 1907). *Myers,* a libel suit arising from alleged defamatory statements in a complaint, explains that Florida's absolute litigation privilege is applicable to communications or statements that are 1) "required or authorized to be made for the proper conduct of a judicial proceeding" and 2) "relevant or pertinent to the subject of inquiry." *Id.* at 362. *See also Levin*, 639 So.2d at 608 ("[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior. . . .").

Later cases explained the scope of absolute litigation privilege. "[F]or an absolute privilege to exist, . . . the question is merely whether the statement was made 'in connection with' or 'in the course of' an existing judicial proceeding." *Stucchio v. Tincher*, 726 So. 2d 372, 374 (Fla. 5th DCA 1999) ("[T]he question is not whether the statement was compelled or under oath. . . ."). Indeed, as the Supreme Court of Florida held, "Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some

18

relation to the proceeding." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (quoting *Levin*, 639 So.2d at 608). In determining whether absolute litigation privilege protects statements made in the judicial process, Florida "courts have not imposed a strict relevancy test. . . ." *Hope v. Nat'l All. of Postal & Fed. Emps., Jacksonville Loc. No. 320*, 649 So.2d 897, 901 (Fla. 1st DCA 1995). Guidance from *Myers v. Hodges* provides that "[i]n determining what is pertinent . . . much latitude must be allowed to the judgment and discretion of those who maintain a cause in court. Much allowance should be made for the earnest though mistaken zeal of a litigant who seeks to redress his wrongs," as well as "for the ardent and excited feelings of the fearless, conscientious lawyer, who must necessarily make his client's cause his own." 44 So. at 362.

Here, the district court found that the Mitchell Complaint was subject to Florida's absolute litigation privilege. *See* Doc. Nos. 22 at 7–9, 135 at 5 n.1. But in its order denying Rubin's motion for summary judgment, the district court incorrectly found that the absolute "privilege does not extend to the Tein Letters because they are neither communications before a judicial officer nor part of pleadings or documents that [were] filed with a court or quasi-judicial body. . . ." Doc. No. 135 at 6. As explained above, this application of Florida's litigation privilege was too narrow. Florida cases provide that an absolute privilege attaches to defamatory words published in the due course of judicial proceedings if the words

are simply relevant or material to the cause at hand or subject of inquiry. *See DelMonico*, 116 So. 3d at 1214; *Gandy v. Trans World Comput. Tech. Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001).

Florida's absolute privilege protects the statements that Grippa alleges are defamatory in the Tein Letters. First, it is unequivocal that Rubin's attorney at the time, Tein, published the statements at issue in the due course of judicial proceedings. Tein sent the letters on the same day he filed the Mitchell lawsuit, as part of the same overall course of action to provide legal representation to Rubin. Absolute privilege applies to the Tein Letters because a litigant or their attorney may publish the contents of a complaint under Florida law, as Tein did here. As further detailed in section I.B.3 below, the plain language of the Tein Letters supports that their purpose was to further Rubin's position in both the Mitchell lawsuit and the underlying DFS investigation.

In *Cherdak*, for example, the district court dismissed a defamation claim pursuant to Florida's litigation privilege where the claim was based on an email sent by counsel that referenced a pending civil lawsuit and attached allegedly defamatory affidavits "[b]ecause the privilege's purpose is to prevent chilled speech in litigation, [and] the privilege does not begin or end at the courtroom door." *Cherdak v. Cottone*, No. 2:22-CV-634-SPC-NPM, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023) *motion for relief from judgment denied,* No. 2:22-CV-634-SPC-NPM, 2023 WL

20

4550543 (M.D. Fla. July 14, 2023), *appeal dismissed,* No. 23-12617-F, 2023 WL 7477253 (11th Cir. Sept. 5, 2023) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004)). The court in *Cherdak* applied the absolute privilege to the allegedly defamatory statements in the drafted affidavits, even though there was a question to whether the attorney even filed the affidavits in the underlying case, simply because the affidavits "were prepared for use in litigation." *Cherdak*, 2023 WL 2044608, at *5. The same principles apply here, as the Tein Letters were prepared in furtherance of the Mitchell lawsuit. Had Tein's requests in the letters been successful, for instance, the resulting inquiry would have generated additional discovery helpful to Rubin's prosecution of his claims against Mitchell.

Further, *Stewart v. Sun Sentinel Co.*, which Rubin primarily relied on in his motion for summary judgment, stands for the proposition "that an attorney who provided a reporter with a notice of claim to a reporter was entitled to absolute immunity for the statements contained within the notice." 695 So. 2d 360, 362 (Fla. 4th DCA 1997); Doc. No. 110 at 12. *Ball v. D'Lites Enterprises, Inc.*, interpreted *Stewart* to hold that "the publication of the complaint or those documents which would be public records when filed in court [is] covered by the judicial absolute immunity, because these documents *are* part of the judicial proceeding." 65 So. 3d 637, 641 (Fla. 4th DCA 2011).

Second, the alleged defamatory statements in the Tein Letters do not just have *some* connection with the subject of the Mitchell lawsuit. The statements are inseparably connected to and would not exist without the Mitchell Complaint, which is itself an absolutely privileged communication. *See Leonard v. Wilson*, 8 So. 2d 12, 14 (Fla. 1942) ("[W]here a defamatory charge against a third person is inseparably connected with a privileged communication concerning another, it will be protected by the privilege."); Doc. Nos. 22 at 9, 135 at 5 n.1 (finding that the statements in the Mitchell Complaint "are absolutely privileged"). Tein's statements in the letters are only arguably defamatory to Grippa because they reference and recite the allegations made in the Mitchell Complaint itself. These statements would not be defamatory toward Grippa without reference to allegations that appear only in the Mitchell Complaint. *See* Doc. No. 124-13 at 10.

Contrary to the district court's holding, there can be no claim for defamation by implication where the claim requires inferences made from allegations contained in a privileged complaint because "[a]ll of the protections of defamation law that are afforded to . . . private defendants are . . . extended to the tort of defamation by implication." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008). To illustrate this impossibility, consider how Grippa will present the evidence in this case to a jury should this Court affirm the district court's decision. Grippa would submit the Tein Letters as evidence of defamation regarding Patronis's "inner circle"

22

and "enterprise" and argue that statements in the Tein Letters defame her because they encourage the reader to review the Mitchell Complaint. Grippa would only be able to identify herself as a member of Patronis's "inner circle" or "enterprise" by showing the jury the allegations contained in the Mitchell Complaint. Grippa would thus have to present the Mitchell Complaint as evidence for her defamation claim—but the district court would also need to instruct the jury that allegations in the Mitchell Complaint are absolutely privileged and that no statements therein are actionable for Grippa's defamation claim. Florida's absolute litigation privilege should apply as intended to avoid giving the jury such an impossible and confusing task—disregarding the Mitchell Complaint as absolutely privileged while simultaneously reviewing the Mitchell Complaint to decipher how the Tein Letters' recitation of the same privileged allegations contained in the Mitchell Complaint implicate Grippa.

While the district court found it significant that the letters "include a separate statement that alleges the existence of a criminal enterprise at DFS, whose members violated numerous Florida laws," that statement merely repeated and explained the allegations contained in the attached Mitchell Complaint. Doc. No. 135 at 8. *Compare* Mitchell Complaint, Doc. No. 124-13 at 3–35, *with* Tein Letters, Doc. Nos. 109-3, 109-4. The statements in the Tein Letters, which repeat, summarize, and explain the allegations in the publicly filed complaint, cannot give rise to a

23

defamation claim. *See, e.g.*, *Helena Chemical Co. v. Uribe*, 281 P.3d 237, 246–47, 2012 -NMSC- 021, ¶ 32 (N.M. 2012) ("The statement . . . repeats the allegations of the complaint. Likewise, the statement . . . is an explanation of the damages portion of the complaint. . . .We conclude that the absolute privilege doctrine should apply to these statements, given the limited nature of the statements.").

In sum, Tein's Letters do not make any independent defamatory statement specifically about Grippa and simply reference the allegations in the Mitchell Complaint. The district court erred by holding that Tein's letters contain a "separate defamatory statement" from the Mitchell Complaint because the statements specifically concerning Grippa are intertwined with the Mitchell Complaint's allegations. Moreover, the district court erred by holding that there is additional defamatory liability for an attorney "encouraging" a communication recipient to read a filed complaint, which is the functional equivalent of attaching a copy of a complaint to an email. Tein sent the letters in the due course of his representation of Rubin, summarizing the allegations of a filed civil complaint, and therefore the letters are absolutely privileged.

### B. Florida's qualified litigation privilege applies to and protects the allegedly defamatory statements in the Tein Letters.

*DelMonico* is the Supreme Court of Florida's more recent expansion of the qualified litigation privilege. *See Wilmington Tr., N.A. v. Est. of Gonzalez*, No. 1:15-CV-23370-UU, 2015 WL 13847162, at *4 (S.D. Fla. Dec. 22, 2015) (finding that in

*DelMonico* "the Florida Supreme Court, once more, widened the reach of the [qualified litigation] privilege"). Under *DelMonico,* once a defendant makes a threshold showing of the allegedly defamatory statements' relevance to the subject matter of underlying litigation, the qualified litigation privilege applies to the statements even if they are made outside the "due course" of the judicial proceeding. To rebut the presumption of immunity, the plaintiff must prove that the defendant made the allegedly defamatory statements with express malice.

For the same reasons as those in the preceding section regarding absolute privilege, the district court erred in its interpretation and application of Florida's qualified litigation privilege jurisprudence. The allegedly defamatory statements in the Tein Letters are the same as the allegations in the Mitchell Complaint; those statements are clearly relevant to the subject of the Mitchell lawsuit and are thus protected; and the district court's finding that there is a genuine issue of material fact to be decided by the jury regarding whether the statements were made with express malice to Grippa does not save this error because it is unsupported by both the record evidence and the plain reading of the Tein Letters.

    **1. Florida's qualified litigation privilege applies to allegedly defamatory statements made relevant or pertinent to the subject of the inquiry in an underlying lawsuit.**

In addition to establishing the absolute litigation privilege, *Myers v. Hodges* further established a limited qualified litigation privilege that applies to 1)

"defamatory words published in the course of a judicial procedure" that are 2) "not relevant or pertinent to the subject of inquiry," and held such statements to be "qualifiedly privileged; that is, prima facie privileged." 44 So. at 362. The *Myers* court held that this "class" of litigation privilege, rather than the absolute litigation privilege, applied to the allegedly defamatory statements at issue because, while the statements were made in a complaint (*i.e.,* published in the due course of a judicial proceeding), "the defamatory matter was not material or pertinent to the subject of inquiry." *Id.* at 363.

*DelMonico* and its progeny established another type of qualified litigation privilege that protects statements made in circumstances inverse to those in the limited qualified privilege created by *Myers*. That is, the Florida Supreme Court determined that the qualified litigation privilege also applies when 1) defamatory words are *not* published "in the course of" a judicial proceeding, but 2) *are* "relevant to the subject of inquiry" in an ongoing suit. *See Wilmington*, 2015 WL 13847162, at *4 (finding that in *DelMonico* "the Florida Supreme Court, once more, widened the reach of the [qualified litigation] privilege"); *DelMonico*, 116 So. 3d at 1220 ("I would not begin **constructing qualified privileges (as the majority does here)**. . . .") (Lewis, J., dissenting) (emphasis added).

While *DelMonico* applied the qualified privilege upon finding that a statement was related to an underlying judicial or quasi-judicial proceeding and shifted the

burden to the plaintiff to show express malice without applying the five-part qualified immunity test from *Thomas v. Tampa Bay Downs, Inc.*, or any other qualified immunity test, both the tests in *DelMonico* and *Thomas* review the same essential considerations: forum of publication and relevance to proper underlying subject matter. *See Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d Dist. 2000) (providing that a general qualified privilege applies to allegedly defamatory statements where the statement was made: (1) in good faith; (2) with an interest in the subject by the speaker; (3) with a corresponding interest or duty in the reader; (4) at a proper occasion; and (5) in publication in a proper manner). This is supported by the *DelMonico* court's reasoning that "[t]he competing public policies of safeguarding a plaintiff's reputation and ensuring full disclosure in a judicial proceeding are better served . . . by a qualified privilege" when the alleged defamatory statements are made *ex parte* and outside of court, but still in connection with or in relation to the subject of inquiry in an ongoing lawsuit. *DelMonico*, 116 So. 3d at 1219. The court noted that a qualified privilege deters frivolous defamation lawsuits, as it would require the plaintiff to prove both that the statements "were false and uttered with express malice—*i.e.*, that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff," while simultaneously deterring "participants in the investigatory process outside judicial proceedings from intentionally harming their adversary with impunity." *Id.* at 1218–

27

19 (internal citations omitted). Rubin's arguments at summary judgment substantively addressed *DelMonico* and the primary concerns of either qualified immunity test, which are forum of publication and relevance to proper underlying subject matter. *See* Doc. Nos. 110 at 15–17, 128 at 8–12.

Under *DelMonico*, if an attorney makes a statement during the pendency of a suit, relevant to the subject of the suit, without express malice, the statement is qualifiedly privileged. 116 So. 3d at 1219. This requirement is the same as the requirement that the statements be "relevant or pertinent[3] to the subject of inquiry" for absolute privilege immunity. *Myers*, 44 So. at 361. The use of the word "some" in the requirement from *DelMonico* that alleged defamatory statements have "some relation to" the subject of the underlying suit to be protected by qualified privilege further indicates a lenient standard by implying that the statements need not be directly or altogether related to the underlying suit to be protected, so long as there is *some* relation to ongoing litigation. 116 So. 3d at 1208. This equivalates to any

---

3 The definition of *relevance* is "relation or pertinence to the issue at hand" *Relevance*, Black's Law Dictionary (11th ed. 2019). The definition of *pertinence* is "[o]f, relating to, or involving the particular issue at hand. . . ." *Pertinent*, Black's Law Dictionary (11th ed. 2019). The dictionary generally defines a "connection" as a "causal or logical relation or sequence" or a "contextual relation or association." *Connection*, Merriam-Webster, https://www.merriam-webster.com/dictionary/connection (last visited on Nov. 16, 2023). The dictionary defines "In relation to" as "about (something or someone): in reference to." *In relation to*, Merriam-Webster, https://www.merriam-webster.com/dictionary/in%20relation%20to (last visited on Nov. 16, 2023).

statement by an attorney in the scope of representation—so long as the attorney does not make the statements with express malice.

*DelMonico* is particularly instructive in determining whether the Tein Letters have "some relation to or connection with" the subject of the underlying Mitchell lawsuit. The *DelMonico* court found that an attorney's alleged defamatory statements were "relevant" to an underlying lawsuit because the subject of the underlying lawsuit was the defamation caused by the defendant's attorney telling others that DelMonico had engaged in criminal activity. Thus, the attorney's discussion with prospective witnesses about DelMonico's alleged criminal activity was related to the subject of the inquiry "because [the attorney] was gathering information about the veracity of the central accusations against his client. . . ." *DelMonico*, 116 So. 3d at 1220.

As another analogous example, the court in *Pomfret* applied *DelMonico* and found that the qualified litigation privilege protected a party to ongoing litigation from liability for calling the opposing party a "crook" to a potential witness because the "statements bore some relation to or connection with the subject of inquiry in the underlying lawsuit." *Pomfret v. Atkinson*, 137 So. 3d 1161, 1163–64 (Fla. 4th DCA 2014). The subject of the underlying lawsuit was a borrower's non-payment under promissory notes, where the borrower had allegedly falsely represented that he would invest the funds advanced and split profits with the lender. *Id.* at 1163. After

filing suit, the lender called a potential witness who had also lent the borrower money, for the purpose of telling the witness that if the borrower owed them money, the witness "should call him and get it." *Id.* During the call, the lender allegedly called the borrower a "crook." *Id.*

The borrower lodged a counterclaim for defamation against the lender. *Id.* At trial, the lender moved for a directed verdict on the counterclaim pursuant to Florida's absolute litigation privilege, and the court granted the motion. *Id.* The borrower appealed, and the Florida appellate court held that because the lender made statements *ex parte* and outside of the court to a non-party potential witness, they were not absolutely privileged, but rather qualifiedly privileged, as established in *DelMonico*. *Id.* at 1164. The court held that the qualified privilege applied because 1) the defamatory statement that the borrower was a "crook" had some connection or relation to the subject of the underlying lawsuit—that the borrower was liable for fraud, conversion, and breach of fiduciary duty; and 2) the borrower did not show that the lender "was motivated *primarily* by a desire to harm [his] reputation, as opposed to being motivated by the legitimate purpose of warning [the witness] to get his money back." The appellate court affirmed the final judgment, finding harmless the trial court's error in its ruling that absolute immunity applied to the statements. *Id.*

Together, these cases make clear that in determining whether alleged defamatory statements have "some relation to or connection with the subject of inquiry in [an] underlying lawsuit," *DelMonico*, 116 So. 3d at 1208, the trial court should apply a liberal standard that is deferential to communications of attorneys who are engaged in the representation of a client in an ongoing lawsuit. *See Levin*, 639 So.2d at 608 ("Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.").

Indeed, a recent case from the Southern District of Florida noted that "[w]hen attorneys are involved in 'informal,' out-of-court activities that nonetheless relate to some anticipated judicial process, then a qualified immunity is instead applied to their actions. **Only if an attorney's actions are not connected in any way with a judicial proceeding are they subject to no privilege**." *Gonzalez v. Porter*, No. 23-20356-CIV, 2023 WL 2923601, at *3 n.3 (S.D. Fla. Apr. 13, 2023) (emphasis added) (citation to *DelMonico* omitted). *See also Pace v. Bank of New York Mellon Tr. Co. Nat'l Ass'n*, 224 So. 3d 342, 345 (Fla. 5th DCA 2017) (citing *DelMonico* and specifying pertinence to the underlying judicial proceeding as the only requirement for qualified privilege to apply); *Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 527 (Fla. 3d DCA 2017) (the alleged defamatory statements "were part of the informal

investigation during pending litigation and had *some relation*" to the lawsuit such that qualified privilege applied).

      **2.**  **The district court erred in finding that the qualified litigation privilege does not protect the allegedly defamatory statements in the Tein Letters.**

Florida's qualified litigation privilege clearly protects the statements in the Tein Letters because they are relevant, pertinent, connected, and have some relation to the subject of inquiry in an ongoing judicial proceeding—the Mitchell lawsuit. To make out Grippa's prima facie defamation claim at summary judgment, the district court directly identified allegations contained in the Mitchell Complaint. The court found that Grippa had based her defamation claim upon "[t]he Tein Letters [which] do not mention Plaintiff by name, but . . . allege that 'Patronis and his inner circle' have violated numerous Florida laws and ask the recipients to review the attached Mitchell Complaint, which clearly defines 'Patronis's inner circle' as a group of six people that includes Plaintiff." Doc. No. 145 at 4. The district court had previously found at the motion to dismiss stage that "the statements Plaintiff alleges as defamatory [in the Mitchell Complaint] are **relevant to** Defendant's claim in the state court lawsuit" because "the lawsuit is entirely premised on the fact that the 'enterprise' engaged in criminal activity and sought to defame him" and "the statements implicating Plaintiff as part of an enterprise not only **bear some relation** to the state court lawsuit, but the state court lawsuit is entirely premised on these

statements." Doc. No. 22 at 8–9 (emphasis added). Logically, the alleged defamatory statements in the Tein Letters could not defame Grippa unless they were made "in connection with or in relation to" the ongoing Mitchell lawsuit because it would be impossible for Grippa, the Court, or anyone else to explain how Grippa had been defamed by the letters without referring to the Mitchell Complaint.

Moreover, *DelMonico's* facts are analogous to the facts in this case. Tein, Rubin's attorney at that time, sent the letters after filing the Mitchell Complaint on Rubin's behalf. The Mitchell Complaint included a claim for violation of the Florida civil Racketeer Influenced and Corrupt Organization (RICO) Act. *See* Doc. No. 124-13 at 3–33. To state a claim under that statute, a plaintiff must allege the existence of an enterprise that engages in a "pattern of criminal activity." *Lugo v. State*, 845 So. 2d 74, 97 (Fla. 2003). The Mitchell lawsuit alleged an ongoing criminal pay-to-play scheme directed by lobbyist Mitchell and Florida Chief Financial Officer Patronis, in which their operatives, including Grippa, orchestrated Rubin's firing after he and his father refused their demands for campaign contributions and political favors. The Mitchell lawsuit alleges that criminal enterprise manufactured false sexual harassment claims against Rubin, followed by a sham investigation of those allegations, for the express purpose of firing Rubin after he refused to "pay" as the enterprise demanded he do pursuant to its "pay-to play" scheme. The Tein Letters specifically requested that their recipients intervene in the sham investigation

because the investigators (members of the criminal enterprise) had a conflict of interest, which the attached Mitchell Complaint described. Had the recipients acted upon Tein's requests, Tein would have obtained information and documentation that would have been exchanged as discovery relevant to the Mitchell lawsuit.

Like the attorney in *DelMonico*, Tein, through his letters, sought information about, and assistance with, the subject of the underlying Mitchell lawsuit. *See* Doc. Nos. 109-3, 109-4. Specifically, the Tein Letters sought intervention in the ongoing investigation (the subject of the Mitchell Complaint) and the opening of a new investigation that could have supported Rubin's position in the Mitchell lawsuit. Like the attorney in *DelMonico*, Tein sought to "gather information about the veracity of the central accusations" of the lawsuit. Given this context, the qualified litigation privilege clearly protects the statements in the Tein Letters—they are restatements of the Mitchell Complaint's allegations supporting Rubin's RICO claim and seek to gather information about those allegations. *See* Doc. No. 145 at 19 (noting that the "letters include statements **pertaining to** the allegations included in a civil complaint") (emphasis added). Since the Mitchell lawsuit concerned the DFS investigation and Tein sent the Letters "in relation to or in connection with" the Mitchell lawsuit, any defamatory statements in the Tein Letters are subject to the qualified litigation privilege.

34

**3. The district court erred in finding that a genuine dispute of material fact exists regarding whether Grippa can prove express malice because there is no evidence that Rubin wrote the Tein Letters primarily to injure Grippa's reputation.**

If the alleged defamatory statements are "connected with or related to the subject of inquiry in the underlying lawsuit, the defendant to a defamation action is entitled to assert a qualified privilege, placing the burden upon the plaintiff to then prove the additional element of express malice." *DelMonico*, 116 So. 3d at 1219. In its order denying Rubin's motion for summary judgment, the district court determined that in this case, "the issue of malice is likely a question for the jury." Doc. No. 135 at 9 n.3. However, to prove express malice, a complainant must show by a preponderance of the evidence that the defendant made the statements at issue and with the primary motive of injuring the reputation of the complainant. *DelMonico*, 116 So. 3d at 1220. The primary purpose of the communication itself demonstrates the primary motive of the speaker, and to prove express malice, the evidence primary purpose of ill-will, hostility, and an intent to defame *must be greater than any other legitimate purpose. See Pomfret v. Atkinson*, 137 So. 3d 1161, 1164 (Fla. 4th DCA 2014).

Under no circumstances can Grippa prove the element of express malice as required for her claim. Even if the Tein Letters had included Rubin as the speaker or bore *some* hostility towards Grippa, Grippa cannot prove that Rubin's *primary motive* in Tein's letters was to injure her reputation. After the parties conducted

35

extensive discovery on Grippa's claims, there is not a scintilla of evidence to support an allegation that the letters were sent with the motive, much less the *primary motive*, of specifically injuring Grippa's reputation—and certainly not the preponderance of evidence required to show express malice. To fully appreciate how difficult Grippa's burden is to meet, consider that Grippa must show Tein wrote the letters as a vessel for Rubin's primary motive and that primary motive was specifically to injure Grippa's reputation. Grippa never took Tein's deposition and did not offer any evidence to support a jury's finding that Tein wrote the letters primarily to carry out Rubin's supposed motive to injure Grippa's reputation. The only evidence of motive in the record, other than Rubin's unequivocal statement that he never authored, reviewed, or approved the Tein Letters before Tein sent them, is the letters themselves. In those letters Tein wrote that he was seeking assistance regarding the pending DFS investigation against Rubin and to open an investigation into the Mitchell Complaint's allegations.

Further, Tein did not name Grippa in the letters—her name did not appear until eight pages into the attached Mitchell Complaint. Reviewing the only evidence before the district court, the letters themselves, the district court stated, "[b]ased on the contents of the Tein Letters, **their purpose** was to convince Governor DeSantis and General Miguel to intervene in Defendant's sexual misconduct investigation pursuant to section 14.32, Florida Statutes." Doc. No. 135 at 8 n.2 (emphasis added).

36

In other words, the district court expressly found that defaming Grippa was *not* the letters' primary purpose. Grippa's only evidence of Rubin's "ill-will, hostility or evil intent" consisted of supposition completely unconnected to the Tein Letters themselves, and that evidence is insufficient to prove that the letters were sent with the *primary* motive of defaming Grippa. *See Pomfret*, 137 So. 3d at 1164 (applying *DelMonico* qualified privilege to defendant's statements, which bore some relation to ongoing litigation, because plaintiff "did not show that [defendant] was motivated *primarily* by a desire to harm [plaintiff's] reputation").

Since the Mitchell lawsuit was filed the same day Tein sent the letters, another purpose of the letters evident from the requests they communicated was to generate discovery by asking the recipients to investigate the allegations in the attached Mitchell Complaint.[4] Even if the record did include facts to indicate that Tein made the allegedly defamatory statements in the Tein Letters with some intent to harm Grippa's reputation, that intent would *at most* be a secondary (or tertiary) motive of

---

[4] Tein chose the recipients of the letters in relation to and in connection with their roles in the investigation. The letters were sent to Governor DeSantis and General Miguel, who could intervene in the DFS investigation and open an investigation into Patronis under Florida law; Inspector General Bradley Perry, who was leading the investigation at that time; and Attorney General Ashley Moody and Chief Financial Officer Jimmy Patronis, who were each members of the Financial Services Commission, the voting body that would review the findings of the investigation to determine whether Rubin should be removed as commissioner. Each of these individuals were related to the subject matter of the Mitchell lawsuit (the investigation). *Contra* Doc. No. 135 at 8–9.

the letters, and a secondary motive is insufficient to support a finding of express malice. As explained in *Pomfret*, a "speaker does not forfeit the [qualified] privilege merely because he or she also in fact feels hostility or ill will toward the plaintiff. The incidental gratification of personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege." *Id.* (internal citation omitted).

While Grippa has pointed to circumstantial evidence in the record surrounding interactions completely separate from the Tein Letters as evidence of Rubin's feelings of ill will or hostility toward her, that evidence does not satisfy her burden to demonstrate by a preponderance of the evidence that the *primary motive* of the statements in the Tein Letters was to injure her reputation. *See* Doc. No. 125 at 5 (citing an email in which Rubin stated that Grippa's characterization of their interview was "absurd"), 7–8 (citing an email stating that "the counteroffensive" had been launched sent by a consultant whom Rubin had briefly employed before Rubin hired Tein and well before the Tein Letters), 28–29 (describing Grippa's actions toward Rubin, central to his allegations in the Mitchell Complaint, which she argues caused him to have ill will toward her). This evidence, even when considered in the light most favorable to Grippa, is not sufficient to overcome the fact that the Tein Letters were simply not about Grippa—they were about requesting an investigation of the facts contained in the Mitchell Complaint and the impartiality of the DFS

38

investigation (*i.e.,* the subject matter of the Mitchell lawsuit). Because defaming Grippa clearly was not the primary motivation of the statements in the Tein Letters that Grippa alleges were defamatory, she cannot prove express malice.

## II. Rubin is not liable in a defamation lawsuit arising from his attorney's statements made while representing Rubin.

Rubin is on the cusp of standing trial on Grippa's defamation claim for statements made by his lawyer, even though Rubin was not the author of the allegedly defamatory statements in the Tein Letters or, by extension, the Mitchell Complaint. To maintain her claim against Rubin, Grippa necessarily argued that Rubin stepped into Tein's shoes as the speaker and directed Tein to publish the alleged defamatory statements with the primary motive of injuring Grippa's reputation. However, there is no evidence that Rubin wrote the letters, directed Tein to write the letters, or caused Tein to send the letters such that Grippa can impute any improper motive within the letters to Rubin. To the contrary, the record contains Rubin's affidavit, in which he swears that he first became aware of the Tein Letters after they had been sent to their recipients; that Rubin did not author, contribute to, approve, or direct the letters; and that the letters were sent less than two weeks into Tein's representation of him, when Rubin was relying entirely upon Tein's professional judgment in all actions taken on his behalf in regard to the Mitchell lawsuit and the ongoing DFS investigation. *See* Doc. No. 109-1.

39

Grippa's claim depends on attributing Tein's statements to Rubin, but no legal theory is available to Grippa that would support such an attribution. While the district court held that Rubin could be vicariously liable for Tein's statements, it did not consider that under the rules of professional responsibility governing the legal profession, an attorney cannot commit libel on behalf of his client. In Florida, libel is a misdemeanor of the first degree, Fla. Stat. § 836.01, punishable as a crime by up to one year imprisonment and fines. Fla. Stat. § 775.082(4)(a). Further, Rule 4-1.2(d) of the rules regulating the Florida Bar states that "[a] lawyer must not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal."

Even outside the context of an attorney-client relationship, Florida law states, "[t]here is no liability where the agent has stepped aside from his employment to commit a tort which the principal neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the agent to do. . . ." *Chestnut Assoc., Inc. v. Assurance Co. of Am.*, 17 F. Supp. 3d 1203, 1211 (M.D. Fla. 2014) (citing *Jones v. City of Hialeah*, 368 So.2d 398, 401 (Fla. 3d DCA 1979)). Rubin argued to the district court that an attorney cannot both act on behalf of his client and commit a tort (or a crime), but the district court never addressed the argument. Doc. Nos. 110 at 14, 128 at 1.

40

In other Florida cases in which attorneys take some action during their representation of a client that gives rise to a tort claim or statutory violation, the attorneys, rather than their clients, are the proper defendants. *See, e.g.*, *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 381 (Fla. 2007); *Levin*, 639 So. 2d at 607 (Fla. 1994); *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 921 (Fla. 2d DCA 2017); *LatAm Invs., LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 241 (Fla. 3d DCA 2011). The proposition that the district court could force Rubin to stand trial on Grippa's defamation claim for the tortious actions of his then-attorney has absurd and disturbing implications. For example, suppose an overzealous attorney threatened a potential witness with bodily harm. Under Grippa's theory of liability, the witness could hold the client liable for his attorney's tortious assault. This result would be unjust. The threatened witness should instead pursue a civil lawsuit against the tortfeasor attorney, just as Grippa should have pursued any legitimate defamation claims against the alleged tortfeasor, Tein.

Logic and public policy support this conclusion. "[T]he Florida Supreme Court has repeatedly reasoned that the applicability of the litigation privilege 'does not mean . . . that a remedy for a participant's misconduct is unavailable in Florida." *Ferrer v. Bayview Loan Serv'g, LLC*, No. 15-20877-CIV, 2015 WL 13816225, at *3 (S.D. Fla. Aug. 24, 2015) (citing *Levin*, 639 So.2d at 608). "[A]dequate remedies still exist for misconduct in a judicial proceeding, most notably the trial court's

contempt power, as well as the disciplinary measures of the state court system and bar association." *Echeverria*, 950 So.2d at 384; *Perez v. Nuereaus Inv. Grp. No. II, LLC*, No. 9-cv-20784, 2009 WL 1973476, at *3 (S.D. Fla. July 8, 2009).

In its order denying Rubin summary judgment, the district court focused on Rubin's alleged "history of involvement with drafting correspondences sent by his attorneys," coupled with use of the word "we" in the Tein Letters, as indications of a genuine dispute of material fact regarding Rubin's involvement with the letters. *See* Doc. No. 135 at 11–12. However, Tein's use of the word "we" in letters he sent during his representation of Rubin is indicative of nothing more than a lawyer advocating his client's interests, or even referring to Tein's team of lawyers and is not sufficient to support a genuine dispute of material fact. Furthermore, Rubin's interactions and communications with his other attorneys prior to retaining Tein, in different circumstances, are not probative as to whether Rubin directed Tein to commit a tort, an act necessarily outside the attorney-client relationship. *Id.* at 12 (district court finding that the "emails [between Rubin and former counsel cited by Grippa] do not concern the Tein Letters").

Tein, like every other attorney who represents a client, acted pursuant to his own professional judgment. Moreover, Rubin hired Tein to be his attorney and reasonably expected that his attorney would follow both the rules of professional responsibility and Florida law. If Tein, in the course of exercising that professional

42

judgment, crossed a line into tortious conduct, the liability for crossing that line should lie solely with Tein.

## **CONCLUSION**

Because Grippa cannot make a prima facie defamation claim arising from the Tein Letters without reliance on allegations in the Mitchell Complaint, Rubin is entitled to final summary judgment as a matter of law. Grippa's name does not appear in Tein's Letters, and the litigation privilege prevents statements in the Mitchell Complaint from being the basis of a defamation claim. Therefore, this Court should not allow Grippa's lawsuit to proceed to trial and should grant Rubin summary judgment pursuant to Florida's litigation privilege.

Dated this 17th day of November 2023.

**RONALD RUBIN,**
**Appellant,**
**By Counsel,**

/s/ James L. Kauffman
James L. Kauffman (FL #012915)
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington DC 20007
T: 202.463.2101
F: 202.463.2103
jkauffman@baileyglasser.com

*Counsel for Defendant-Appellant*
*Ronald Rubin*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 10,123 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Local Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a [proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated this 17th day of November 2023.

**RONALD RUBIN,**
**Appellant,**
**By Counsel,**

/s/ James L. Kauffman
James L. Kauffman (FL #012915)
Bailey & Glasser LLP
*Counsel for Defendant-Appellant*
*Ronald Rubin*

1055 Thomas Jefferson Street NW
Suite 540
Washington DC 20007
T: 202.463.2101
F: 202.463.2103
jkauffman@baileyglasser.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the Court's electronic filing system on November 17, 2023, which will serve the registered participants in the case.


Dated this 17th day of November 2023.

> **RONALD RUBIN,**
> **Appellant,**
> **By Counsel,**
>
> /s/ James L. Kauffman
> James L. Kauffman
> *Counsel for Defendant-Appellant*
> *Ronald Rubin*