**No. 23-11714-H**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**
_____

**KIMBERLY GRIPPA**,
*Plaintiff/Appellee*,

v.

**RONALD RUBIN**,
*Defendant/Appellant.*

_____

On Appeal From the United States District Court
for The Northern District of Florida
Honorable Mark E. Walker

No. 4:20-cv-00457-MW-MAF

_____

**ANSWER BRIEF FOR APPELLEE KIMBERLY GRIPPA**
_____

Marie A. Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
marie@mattoxlaw.com

COUNSEL FOR APPELLEE-PLAINTIFF

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>
<u>**AND CORPORATE DISCLOSURE STATEMENT**</u>

Appellee/Plaintiff Kimberly Grippa, pursuant to FRAP 26.1 and 11th

Cir. R. 26.1-1, 26.1-2, and 26.1-3, files her Certificate of Interested Persons and

Corporate Disclosure Statement as follows:

1. James L. Kauffman (Counsel for Appellant)

2. Bailey & Glasser LLP (Law Firm for Appellant)

3. Kimberly Grippa (Appellee)

4. Ronald Rubin (Appellant)

5. Marie A. Mattox (Counsel for Appellee, Grippa)

6. Marie A. Mattox, P.A. (Law Firm for Appellee, Grippa)

7. Hodkin, Adam Jay, Esq.

8. Hodkin Stage Ward PLLC

9. Kauffman, James, Esq.

10. Snyder, Eric, Esq.

11. Honorable Mark E. Walker (District Court Judge)

*/s/ Marie A. Mattox*
Marie A. Mattox
*Counsel for Plaintiff-Appellee, Grippa*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will not be of any assistance. The lower court already made extensive findings, via well-reasoned orders, and already engaged multiple times in a "robust discussion of the issues." Additionally, this Court lacks jurisdiction to hear this interlocutory appeal, as described in the parties' responses to the Court's June 9, 2023 Order. In sum, the taking of this appeal is untimely, a complete waste of judicial resources, and should be immediately denied.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT.........................................................i

TABLE OF CITATIONS ........................................................... v

STATEMENT OF JURISDICTION ......................................................x

STATEMENT OF THE ISSUES ...........................................................1

INTRODUCTION ...................................................................2

STATEMENT OF THE CASE...........................................................3

    A.    Statement of the Facts.........................................................4

    B.    Procedural History .........................................................12

    C.    Standard of Review.........................................................14

SUMMARY OF ARGUMENT...........................................................17

ARGUMENT...................................................................18

    I.    Florida's absolute and qualified litigation privilege does
        not apply to or protect the defamatory statements.........................19

        A.    Florida's absolute litigation privilege does not apply to
            the allegations in the Mitchell Complaint or the
            statements in the Tein Letters.....................................19

        B.    Florida's qualified litigation privilege does not apply
            to or protect the defamatory statements in the
            Tein Letters...................................................25

            1.    Florida's qualified litigation privilege does not

iv

apply to defamatory statements allegedly relevant
or pertinent to the subject of the inquiry ........................25

    2.    The district court did not err in finding that the
qualified litigation privilege does not protect the
defamatory statements in the Tein Letters. ....................28

    3.    The district court did not err in finding that a
genuine dispute of material fact exists regarding
whether Grippa can prove express malice....................31

  C.  Even if Appellant is correct, he is complaining about error he
invited ............................................................................35

II.    Appellant is liable in a defamation lawsuit arising from his
attorney's statements made while representing Appellant..........36

CONCLUSION ....................................................................46

CERTIFICATE OF COMPLIANCE ....................................................47

CERTIFICATE OF SERVICE ..............................................................48

## <u>TABLE OF CITATIONS</u>

**Cases:**

<u>American Nat. v. Guarantee</u>,
 810 So. 2d 996, 998 (Fla. 4th DCA 2002) ....................................................14

<u>Andrew H. Boros, P.A., v. Arnold P. Carter, M.D., P.A.</u>,
 537 So. 2d 1134 (Fla. 3d DCA 1989) ...........................................................36

<u>Axelrod v. Califano</u>,
 357 So.2d 1048 (Fla. 1st DCA 1978) ...........................................................26

<u>Ball v. D'Lites Enterprises., Inc.</u>,
 65 So.2d 637 (Fla. 4th DCA 2011) ...............................................................23

<u>Bd. of Tr. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup</u>,
 622 F.3d 1335 (11th Cir. 2010)......................................................................37

<u>Birmingham Steel Corp. v. Tenn. Valley Auth.</u>,
 353 F.3d 1331, 1341 n. 5 (11th Cir.2003) ....................................................37

<u>Brooks Tropicals, Inc. v. Acosta</u>,
 959 So. 2d 288 (Fla. 3d DCA 2007) ..............................................................38

<u>Cherdak v. Cottone</u>, No. 2:22-CV-634-SPC-NPM, 2023 WL 2044608,
 (M.D. Fla. Feb. 16, 2023)..............................................................................22

<u>Debrincat v. Fischer</u>,
 217 So.3d 68 (Fla. 2017) ...............................................................................34

<u>DelMonico v. Traynor</u>,
 116 So. 3d 1205 (Fla. 2013) ...................................................................20, 25

<u>Doe v. Princess Cruise Lines, Ltd.</u>,
 657 F.3d 1204 (11th Cir. 2011) .............................................................15, 35

Fridovich v. Fridovich,
    598 So. 2d 65 (Fla. 1992) ...........................................................................31

Glickman v. Potamkin,
    454 So.2d 612 (Fla. 3d DCA 1984) ...........................................................30

Glob. Markets, Inc.,
    622 F.3d 1335 (11th Cir. 2010) ..................................................................37

Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.,
    708 F.2d 944 (5th Cir. 1983) ......................................................................33

Griffith v. Inv. Co.,
    110 So. 271 (Fla. 1926) ..............................................................................38

Harvard Farms, Inc. v. National Cas. Co.,
    617 So.2d 400 (Fla. 3d DCA 1993) ) .........................................................44

Herbert v. Lando,
    441 U.S. 153 (1979) ...................................................................................32

Jarzynka v. St. Thomas Univ. of Law,
    310 F. Supp. 2d 1256 (S.D. Fla.2004) .......................................................31

Jews for Jesus, Inc. v. Rapp,
    997 So.2d 1098 (Fla.2008) ........................................................................19

Johnson v. Jones,
    115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ..................................................13

Kaye Scholer LLP v. Zalis,
    878 So. 2d 449 (Fla. 3d DCA 2004) ............................................................4

Lee v. Florida Dep't of Ins. and Treasurer,
    586 So.2d 1185 (Fla. 1st DCA 1991) .........................................................45

Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire
Ins. Co.,
639 So. 2d 606, 607 (Fla. 1994) ...................................................15

Lewis v. Evans,
406 So.2d 489 (Fla. 2d DCA 1981) ............................................28

Litman v. Mass. Mut. Life Ins. Co.,
739 F.2d 1549, 1561 (11th Cir. 1984) .........................................27

Mahnke v. Northwest Publications, Inc.,
160 N.W. 2d 1 (Minn. 1968) ......................................................33

Mary J. Kaufman, P.A. v. Davis & Meadows, P.A.,
600 So.2d 1208 (Fla. 1st DCA 1992) ..........................................45

Nodar v. Galbreath,
462 So.2d 803 (Fla. 1984) ..........................................................28

Pledger v. Burnup & Sims, Inc.,
432 So.2d 1323 (Fla. 4th DCA 1983).........................................26

Pomfret v. Atkinson,
137 So. 3d 1161 (Fla. 4th DCA 2014).........................................26

Pratt v. Nelson,
164 P.3d 366  (Utah 2007) .........................................................21

Randolph v. Beer,
695 So.2d 401 (Fla. 5th DCA 1997) ..........................................28

Scholz v. RDV Sports, Inc.,
710 So. 2d 618 (Fla. 5th DCA 1998)..........................................19

Scott v. Busch,
907 So. 2d 662 (Fla. 5th DCA 2005) ..........................................19

Shanks v. Alliedsignal, Inc.,
    169 F.3d 988 (5th Cir. 1999) ..................................................................12, 13

Sims v. State,
    867 So. 2d 1208 (Fla. 3d DCA 2004) ..........................................................37

Smith v. Pelham,
    2021 WL 5863412 (11th Cir. Dec. 10, 2021 .................................................26

Southern Bell Telephone and Telegraph v. Deason,
    632 So.2d 1377 (Fla. 1994) ...........................................................................4

Stewart v. Sun Sentinel Co.,
    695 So.2d 360 (Fla. 4th DCA 1997) .....................................................23, 24

Tamez v. City of San Marcos, Texas,
    62 F.3d 123 (5th Cir. 1995) ..........................................................................13

Thomas v. Jacksonville Television, Inc.,
    699 So.2d 800 (Fla. 1st DCA 1997) .............................................................40

Thomas v. Tampa Bay Downs, Inc.,
    761 So.2d 401 (Fla. 2d DCA 2000) ..............................................................28

Turner v. Charter Sch. USA, Inc.,
    18-24005-CIV, 2020 WL 620392 (S.D. Fla. Jan. 14, 2020) ......................40

Van Cauwenberghe v. Biard,
    486 U.S. 517, 524, 108 S.Ct. 1945, 1950, 100 L.Ed.2d 517 (1988) ...........13

Zerangue v. TSP Newspapers, Inc.,
    814 F.2d 1066 (5th Cir. 1987) ......................................................................33


**Statutes:**

Fla. Stat. § 90.502....................................................................................................4

Fla. Stat. § 836.05.................................................................................8

Fla. Stat. § 777.04...............................................................................19

**Other Authorities:**

<u>Showing Constitutional Malice in Media Defamation</u>,
    Fla. B.J., September/October 2018............................................32

Florida's Standard Jury Instruction on Malice, 406.5 .....................................33

## STATEMENT OF JURISDICTION

Ronald Rubin ("Appellant") brings this interlocutory appeal from the United States District Court for the Northern District of Florida, Tallahassee Division after it denied his motions for summary judgment and for reconsideration. On June 9, 2023, this Court ordered the parties to file answers to its jurisdictional questions, which they did. As explained by Appellee's ("Grippa's") Jurisdictional Brief filed in response to that Order, no interlocutory appeal is available in this case.

Additionally, although Appellant claims in its Statement of Jurisdiction that the "district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000," it has not proven it that Appellant. Obviously, Grippa believes this threshold is met, but she is not attempting to invoke this Court's jurisdiction. So, this appeal should also be dismissed also because Appellant failed to prove this jurisdictional threshold.

## STATEMENT OF THE ISSUES

I.    Appellant's first Statement of the Issues (i.e., Section I) is misleading because it includes the phrase "not defamatory" in describing the first issue. Here, the statements Appellant made against Grippa are defamatory, such as that she is part of a criminal enterprise.

II.    Likewise, Section II is also misleading because Appellant not only "vicariously" liable in this case. He is directly liable for his acts done per his directions and/or course of dealing through his attorney. In other words, the Appellant cannot direct his attorney to defame someone and then disclaim all liability.

## **INTRODUCTION**

This case should not be on appeal. On that note, on June 9, 2023, this Court directed the parties to file answers to its jurisdictional question about it. Grippa's response demonstrates that this matter is not appropriate for an interlocutory appeal. Therefore, this matter should be remanded.

Even if an interlocutory appeal was appropriate, factual issues make it practically unfeasible. For example, there is at least a genuine issue of triable fact regarding whether the Appellant acted with malice, the application of Florida's privileges to the Tein Letters and their attachments, what actually was attached to those letters (such as what was in the linked Dropbox folder), whether the letters were really sent before or after any state court complaint was filed, and the scope of Appellant's counsel's legal representation.

These are just some examples of the myriad of factual disputes at issue, although Appellant's Brief incorrectly claims that there no factual disputes. That is because he is just ignoring them, and documentary evidence of them. For example, he dodges his unique mode of operation whereby he would direct his attorneys to send letters that might ordinarily come from other persons, such as media consultants. The lower court specifically relied on

documents proving that mode of operation, and Appellant's failure to include them in his Appendix makes this appeal taken in bad faith. There is a reason Appellant failed to include in his Appendix ECF Nos. 124-1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11,  12, 14, 15, 16, 17, 18, 19, 20 and 21 – some of which the lower court specifically referenced.

Additionally, as pointed out by the lower court, even if there was an error, the Appellant invited it. Thus, whether on jurisdictional grounds, because there are factual disputes, or because this appeal is pursued in bad faith, this matter should be remanded.

## STATEMENT OF THE CASE

Appellant's Appendix leaves out – seemingly intentionally – key documents this Court needs to consider in this matter. For example, he includes ECF No. 124 and ECF No. 124-13, but not for some reason any of the other documents Grippa filed in opposition to summary judgment (i.e., ECF No. 124-1 through 124-12). The lower court specifically relied on many of these documents. See, e.g., ECF No. 135 (the Order entered on March 22, 2023, denying Appellant's motion for summary judgment) which references 124-13 (Join Motion for Redaction of Personal Identifying Information, with attachments), and 124-14 (email from Appellant dated May 29, 2019, with

copy to Seth Gordon). The exclusion of these documents appears not to be accidental; they show the control and standard operating procedures Appellant had over his attorneys (a key issue in his instant appeal).

Thus, Appellant failed to provide the fact necessary for this appeal; its Brief and Appendix therefore violate the letter and spirit of FRAP 5(b)(1)(A).[1] Instead, as shown below, there are numerous factual issues that must be resolved before any of these issues can be resolved.

## A.   <u>Statement of the Facts</u>

### 1.   **Appellant's Methodology**

Contrary to the Appellant's contention, many material facts <u>are</u> in dispute. Appellant simply did not include them in its Brief – such as those

---

[1] In a carefully worded entry, Appellant's Appendix lists in Volume II the "**Notice** of Filing Documents in Opposition to Defendants' Motions for Summary Judgment by Kimberly Grippa **with Exhibit 124-13**, 7/1/22." (emphasis supplied). Examination of those documents reveals that Appellant <u>only</u> filed the Notice and part 13 of ECF No. 124. Appellant omitted ECF Nos. 124-1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20 and 21 – even though the lower court specifically relied upon several of them in ruling. Moreover, the first column of its Appendix indicating that ECF No. "124" was included is not true. That is a violation of FRAP 5(b)(1)(A)'s unmistakable requirement that all necessary documents be provided by Appellant.

apparent from ECF No. 112.[2] (documents Grippa subpoenaed).[3] That evidence proves Appellant had close control over letters his attorneys sent.[4] They also show a unique mode of operation whereby he would direct his attorneys to send letters that might ordinarily come from other persons, such as a media consultant.

For example, one email chain dated May 30, 2019, involves a discussion about language strikingly similar to the defamatory statements in the instant case. See ECF No. 124-14 at 63. In that May 30th email chain, Appellant and his attorney at the time (Jared Whaley) discussed language

---

[2] Citations to "ECF No." (akin to Appellant's citations to "Doc. No.") refer to the documents in either Appellant and/or Grippa's Appendix, which retain the assigned document numbers from the CM/ECF system.

[3] Via such a production and their failure to properly object in that Southern District court case, Mr. Gordon and Appellant waived any attorney/client privileges he may have had. See Kaye Scholer LLP v. Zalis, 878 So. 2d 449 (Fla. 3d DCA 2004). Also, Appellant included unnecessary third parties on these emails (i.e., Seth Gordon), and waived any attorney-client privileges to those communications. See Fla. Stat. § 90.502(1)(c), Fla. Stat. (2011); Southern Bell Telephone and Telegraph v. Deason, 632 So.2d 1377 (Fla. 1994).

[4] Notably, Appellant's Appendix leaves out key documents this Court needs to consider this matter. For example, he includes ECF No. 124 and ECF No. 124-13, but not for some reason any of the other documents Grippa filed in opposition to summary judgment. As such, Appellant failed to make a proper record for this appeal and this appeal should be rejected for that reason also.

about a proposed press release. Id. Appellant requested his attorney add language describing how Appellant provided the information to the Inspector General about possible "criminal" acts; he also requested to add Grippa's name to the press release, calling her claims "absurd." Id.

Even more emails show the close direction and control Appellant had over his attorneys and the information they publicly disclose. For example, in one dated May 30, 2019, his attorney asks for permission from Appellant to publish a particular press release statement ("Ron – my apologies. Please advise if you approve this statement:"; Appellant's response was: "OK by me."). Id. at 75. Likewise, on May 30, 2019, Appellant's attorneys discussed if Appellant had approved the new language of a press release ("I think this is ok Has Ron approved the new language?"). Id. at 76. On May 30, 2019, Appellant directs his attorney not to send the release ("Please don't send this letter – I think we should discuss the ending…."). Id. at 78.

Other evidence shows Appellant's rather unique preference for having his attorneys send such communications. In one email dated June 12, 2019, Appellant stated "Jared, Seth [Gordon] can't send the letter – it needs to come from my lawyer(s).") Id. at 103. In two other emails, dated June 12, 2019 and June 13, 2019, Mr. Gordon says he is "baffled" at Appellant's request

6

the statements come from Appellant's attorney. Id. at 108. Mr. Gordon also states that over his many years of consulting, no one had ever "suggested that such communication had to come from an attorney." Id. Thus, it is obvious Appellant's mode of operation is to hide behind his counsel, banking on the attorney/client privilege, and then claim ignorance regarding their acts.

### 2. Grippa's Interview

On or about March 21, 2019, Grippa had an interview with the Florida Office of Financial Regulation for the position of General Counsel. See ECF No. 124-19 ¶ 3. Appellant, who at the time was the Commissioner of the Office of Financial Regulation, interviewed her. Id. During the interview, Appellant made numerous discriminatory statements and acted inappropriately based on her gender. Id.

Grippa reported Appellant's discriminatory statements and actions to Ryan West, Chief of Staff for Florida's Chief Financial Officer. Id. ¶ 4. This incident and additional complaints against Appellant by others resulted in an internal investigation into his behavior. Id.; see also ECF Nos. 124-7 and 124-8 (O.I.G. Summary and Report of Investigation; ECF No. 124-6, Mathers Dep., 29:9-12, 36, 20-22, 38:5-13).

That Summary and Report of Investigation reported numerous other shocking accounts of Appellant's behavior. <u>See</u> ECF Nos. 124-7 and 124-8. Accordingly, the internal investigation determined that Appellant's conduct was severe and pervasive enough to find him guilty of official misconduct. <u>See</u> ECF No. 124-19 ¶ 5; <u>see also</u> ECF No. 124-20. As a result, the Governor's office reviewed his behavior and, in conjunction with the Florida Cabinet, removed Appellant from office. <u>Id.</u>

### 3. The "Counteroffensive" – the Tein Letters

Before he was removed, Appellant sought to derail the internal investigation; his endeavor was referred to by Appellant's consultant, Seth Gordon, as launching the "counteroffensive." <u>See</u> ECF No. 124-15; <u>see also</u> ECF No. 124-5, Gordon Dep. 73:12-16; ECF No. 124-21. In furtherance of that goal, Appellant sent correspondence, through his counsel, to Governor DeSantis and Chief Inspector General Melinda Miguel on or about June 21, 2019, with copies to various high-ranking officials. <u>See</u> ECF Nos. 109-3 and 109-4. Each of the two letters (collectively referred to as the "Tein letters") is discussed below:

#### i. <u>Letter to Governor DeSantis</u>

The June 21, 2019 letter to Governor DeSantis encourages the Governor to "Take jurisdiction over the investigation of" Appellant. <u>See</u> ECF No. 109-3 at 2. It also asks him to "open an investigation into heavily corroborated evidence of misuse of public office by CFO Jimmy Patronis and his inner circle, in violation of Fla. Stat. §§ 836.05 (threats and extortion); 838.016 (unlawful compensation or reward for official behavior) and 839.26 (misuse of confidential information)." <u>Id.</u>

ii.    <u>Letter to Chief Miguel</u>

The June 21, 2019 letter to Chief Inspector General Miranda Miguel also requests him to "assume jurisdiction over the pending investigation of" Appellant. <u>See</u> ECF No. 109-4 at 2. Like the letter to Governor DeSantis which describes an "inner circle," the letter to Chief Miguel refers to an "enterprise." It goes even further by stating: "<u>The grounds for our request are described</u> in our letter to Governor DeSantis <u>and a lawsuit (both hyperlinked and attached</u>)." <u>Id.</u> (emphasis supplied). Moreover, the hyperlink is to a Dropbox file wherein the contents were deleted. <u>Id.</u> According to that letter's plain language, those attachments/Dropbox files included "supporting documentary evidence, including public records, email and text messages" as part of the referenced "lawsuit." <u>Id.</u> This

9

"lawsuit" and the attached and hyperlinked supporting documents are both discussed below.

a.    *The "Lawsuit"*

The plain text of the June 19, 2019 letter to Chief Miguel claims that to understand the "grounds" for "our request", the "lawsuit" attached must be read. See ECF No. 124-13 at 3, the "State Court Case". The State Court Complaint accuses Grippa of carrying out "a pattern of criminal activity" as a part of an "enterprise." Id. at ¶13. Paragraph 13 also states (under a heading titled "THE ENTERPRISE"):

> 13. The following individuals, among others known and unknown, **associated in fact and constituted an "enterprise" for the purpose of carrying out a pattern of criminal activity** for their own benefit, aimed at [Appellant], other individuals and the Citizens of the State of Florida:
> . . .
> **d.    Florida lawyer Kimberly Grippa.**

(emphasis supplied). As if that was not enough, the State Court Complaint draws a chart of this "criminal" "enterprise" – not unlike an FBI chart of a mob-boss family, except this one specifically includes Grippa:

10

**THE ENTERPRISE**

13.    The following individuals, among others known and unknown, associated in fact and constituted an "enterprise" for the purpose of carrying out a pattern of criminal activity for their own benefit, aimed at Rubin, other individuals and the Citizens of the State of Florida:

    c.    Florida CFO Jimmy Patronis;

    d.    DFS Chief of Staff Ryan West;

    e.    OFR Chief of Staff Abigail Vail, Esq.;

    f.    Florida lawyer Kimberly Grippa, Esq.;

    g.    Patronis fundraiser Jeffrey P. Feingold, DDS; and

    h.    Defendant R. Paul Mitchell.



Id. This chart and the allegations in Paragraph 13 are reincorporated in both counts of the State Court Complaint. Id. at 33, 34. Additionally, Paragraph 36 of the State Court Complaint claims Grippa "choreographed" certain emails to "increase[] extortion." Id. at 27.[5]

    b.    *"Supporting Documentary Evidence, Including Public Records, Email and Text Messages"*

---

[5] Grippa, of course, was not part of a criminal enterprise. See ECF No. 124-17, Abigail Vail Aff., ¶¶ 3 and 6; ECF No. 124-18, Mitchell Aff. ¶ 6; ECF No. 124-2, Grippa's Dep. pp. 252-253.

Also, the June 21, 2019 letter to Chief Miguel, the lawsuit (i.e., the State Court Complaint) attached and hyperlinked to "supporting documentary evidence, including public records, email and text messages" and the grounds for the letter's request. <u>See</u> ECF No. 109-4 at 2. However, Appellant did not include any of these documents as part of its instant appeal. Moreover, the files in the hyperlinked Dropbox file have been deleted. <u>Id.</u>, which hyperlinks twice (once at the term "letter" and once at the term "lawsuit"). Following either of these links now results in a Dropbox page stating, "**This item was deleted**." <u>See</u> e.g., ECF No. 124-11 (emphasis supplied).[6]

### 4.    The Fallout

Appellant's slanderous remarks, in his June 19, 2019 letters, attachments, and hyperlinks, were made either directly or via carbon copy to numerous apex employees of the State of Florida: Governor DeSantis, Chief Inspector General Miranda Miguel, the Attorney General, Inspector

---

[6] A highlighted printout of this Dropbox page was filed as ECF No. 124-11. Compare this link to that in the letter to Governor DeSantis (ECF No. 109-3) at footnote 3 to the "Press Release." <u>See</u> ECF No. 124-12, a printout of that link.

General Bradley Perry, and Chief Financial Officer Jimmy Patronis. <u>See</u> ECF Nos. 109-3 and 109-4. That undoubtedly affected Grippa's career. <u>See</u> ECF No. 124-2, Grippa Dep. 230:5-8 (Q. "But by [Appellant] lumping you into an enterprise with other people that you were working with, that somehow prejudiced you at work? A. Oh, absolutely."). At that point, her reputation was "tainted." <u>Id.</u> at 230:19-24. Thus, she could not go to work at the job because she would "be working at a place where other people were there that [she] was supposedly part of a conspiracy with."). <u>Id.</u> at 232:8-15. There would be "no way that [she] would be able to establish credibility with her coworkers, do [her] job." <u>Id.</u> at 234:23-25.

The emotional toll on Grippa was also astounding; she testified: "I basically was physically unable to leave the house for a very long time, because I just felt like every single person who looked at me had read something false about me. It was debilitating to a point that I can't even explain to you." <u>Id.</u> at 235:16-20. Her reputation was "tarnished." <u>Id.</u> at 237:17-18.

### B.    <u>Procedural History</u>

This is an interlocutory appeal. According to his notice of appeal, Appellant relies upon <u>Shanks v. Alliedsignal, Inc.</u>, 169 F.3d 988 (5th Cir.

1999) for the idea that denial of a summary judgment motion based on litigation privilege is immediately appealable. In <u>Shanks</u>, the Fifth Circuit looked to state law to determine whether the basis of a claimed immunity "is properly characterized as an immunity from suit or merely a defense to liability." <u>Id.</u> at 992. The Fifth Circuit found that, in Texas, the absolute privilege was not a defense; instead, it is a true immunity from suit. Because Texas law characterizes the absolute privilege as an immunity, as opposed to a defense, the Firth Circuit held that the denial of a summary judgment motion based on that alleged privilege is immediately appealable. <u>Id.</u> ("Consequently, when we assess whether interlocutory review is appropriate, "[t]he critical question ... is whether 'the essence' of the claimed right is a right not to stand trial,"), citing <u>Van Cauwenberghe v. Biard</u>, 486 U.S. 517, 524, 108 S.Ct. 1945, 1950, 100 L.Ed.2d 517 (1988).

The issues of immunity often turn on issues of fact. <u>See</u> <u>Tamez v. City of San Marcos, Texas</u>, 62 F.3d 123, 125 (5th Cir. 1995), citing <u>Johnson v. Jones</u>, ___ U.S. ___, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), because "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial." Here,

the lower court found issues of fact preclude summary judgment. See, e.g., ECF No. 155 (Order Denying Motion for Indicative Ruling), page 6 ("This Court would conclude that Grippa has shown a genuine dispute of material fact as to whether or not Appellant acted with express malice, making this issue a question for the jury to resolve at trial."). So, this interlocutory appeal is also improper because factual issues are yet to be resolved by the jury.

## C.   <u>Standard of Review</u>

The standard of review is not de novo because the nature of this appeal is not simply one "based on privilege or immunity from suit," as Appellant claims. As further explained in Grippa's Jurisdictional Brief filed with this Court,[7] in Florida, the litigation privilege is an affirmative defense – not a true immunity (as in Texas, wherein the caselaw Appellant relies upon is based).[8] See <u>American Nat. v. Guarantee</u>, 810 So. 2d 996, 998 (Fla. 4th DCA 2002) ("The litigation privilege on which the trial court relied is an affirmative defense.") As opposed to a "true" immunity, for Florida's

---

[7] On June 9, 2023, this Court ordered the parties to brief its jurisdictional questions.

[8] Florida differs substantially from Texas because Texas protects "[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding." <u>Reagan v. Guardian Life Ins. Co.</u>, 140 Tex. 105, 111, 166 S.W.2d 909, 912 (1942).

litigation privilege to apply the alleged statements must not only be made in the course of a judicial proceeding but also must be "relevant to the subject of inquiry." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 607 (Fla. 1994).

Further, as pointed out in its Order Denying Motion for Indicative Ruling, ECF No. 155, footnote 1, the lower court "also has serious doubts as to whether Appellant's appeal of this Court's application of Florida's qualified privilege is a proper appellate issue, given that Appellant asked this Court to apply the five-factor test that Appellant now argues is incorrect." Compare ECF No. 110 at 11 ("Florida law provides a qualified privilege negating a claim for defamation where the speaker acts in good faith, with an interest to be upheld, through a statement limited in scope to a specific purpose and published on a proper occasion and manner.") with ECF No. 142 at 7 ("[T]he Florida Supreme Court in DelMonico [v. Traynor, 116 So. 3d 1205 (Fla. 2013)], applied the qualified privilege to a statement that was related to an underlying judicial or quasi-judicial proceeding and immediately shifted the burden to the plaintiff to show express malice without applying the five-part test. . . . [T]he Florida Supreme Court's holding in DelMonico should control the application of the qualified

16

privilege."); <u>see also</u> <u>Doe v. Princess Cruise Lines, Ltd.,</u> 657 F.3d 1204 (11th Cir. 2011). So, even if the Appellant is correct that the lower court made an error, it was invited and not the proper subject of an interlocutory appeal (as further explained in Grippa's Jurisdictional Brief). There is no standard of review because this appeal is entirely improper.

## SUMMARY OF ARGUMENT

Applying Florida's litigation privilege, no interlocutory appeal is possible after the denial of a motion for summary judgment; the same result applies to a qualified privilege. Factual issues, such as the presence of malice, also prevent it. Moreover, even if there was an error Appellant invited. In sum, the case should be remanded to the District Court for further proceedings, and Grippa should be awarded her attorneys' fees and costs for the wrongful appeal.

## ARGUMENT

### I.   Florida's absolute and qualified litigation privilege does not apply to or protect the defamatory statements.

Appellant's claim that the Tein Letters were just "summarizing the allegations of a filed civil complaint" is just plain false. <u>See</u> Appellant's Brief on page 24. For example, the June 21, 2019 letter to Chief Miguel did not stop by simply attaching the complaint in the Florida State Court Case (Case Number 20-CA-40). <u>Id.</u> It also directs its five different recipients to read the attachments and documents in the hyperlinked Dropbox folder for its supporting facts. <u>See</u> ECF No. 109-4. Further, it includes a link to a Dropbox folder once containing "supporting documentary evidence, including public records, email and text messages." <u>Id.</u> Moreover, "supporting documentary evidence, including public records, email and text messages" were physically attached to the letter. <u>Id.</u>

The Tien Letters and their attachments (including those in the hyperlinked Dropbox folder) at least implied Grippa was an active member of a criminal enterprise. [9] That is sufficient to make out a claim for

---

[9] By way of example, Paragraph 36 of the State Court Complaint claims Grippa "choreographed" certain emails to "increase[] extortion." <u>See</u> Fla.

defamation because Florida recognizes "defamation by implication." <u>See</u> <u>Jews for Jesus, Inc. v. Rapp</u>, 997 So.2d 1098, 1108 (Fla.2008); <u>see also</u> <u>Scott v. Busch</u>, 907 So. 2d 662, 668-69 (Fla. 5th DCA 2005) (finding sufficient evidence for defamation when a person "physically turned and looked directly at the plaintiff" and stated that "a person in her neighborhood had obtained an illegal permit to build in her neighborhood."); <u>Scholz v. RDV Sports, Inc.</u>, 710 So. 2d 618 (Fla. 5th DCA 1998) (Former employee basketball coach established prima facie case of defamation "by presenting evidence that the [Orlando] Magic's statements were untrue, and by establishing the context in which the statements were made and the impact they were likely to have on his profession."). Appellant did much more than just publish the State Court Complaint or summarize it; thus, there is no absolute or qualified privilege.

### A. Florida's absolute litigation privilege does not apply to the allegations in the Mitchell Complaint or the statements in the Tein Letters.

In cases where Florida "has applied the absolute privilege to issues involving defamation, the defamatory statements at issue were made either

---

Stat. § 836.05, describing the felony of extortion; Fla. Stat. § 777.04, describing the crimes of criminal conspiracy.

in front of a judicial officer or in pleadings or documents filed with the court or quasi-judicial body." DelMonico v. Traynor, 116 So. 3d 1205, 1217 (Fla.2013). "In these more formalized judicial settings, the presence of safeguards facilitates and promotes an unimpeded speaking environment while protecting an individual from false or malicious statements for several reasons." Id., discussing such safeguards such as the "comprehensive control exercised by the trial judge." The attachments to the Tein Letters and attachments stepped outside the formalized judicial setting, and thus there can be no absolute privilege because the safeguards mentioned in DelMonico would not apply (such as judicial oversight).[10]

---

[10] Appellant's Brief on page 28 also argues that "the district court found that the Mitchell Complaint was subject to Florida's absolute litigation privilege. See Doc. Nos. 22 at 7–9, 135 at 5 n.1." However, Doc, 22 (Order Denying Motion to Dismiss), on page 9 actually states: "This Court finds that the statements implicating Plaintiff as part of an enterprise not only bears some relation to the State Court lawsuit, but the State Court lawsuit is entirely premised on these statements. As such, the allegedly defamatory statements that appear in the lawsuit, 2019 CA 002535, are absolutely privileged." (emphasis supplied). Moreover, Doc. No. 135 (Summary Judgment Order) makes clear that the Tein Letters are not subject to the privilege because they go "step further, as they (i) include a separate statement that alleges the existence of a criminal enterprise at DFS, whose members violated numerous Florida laws, and (ii) encourage the recipients to review the Mitchell Complaint, which specifically names Plaintiff as a member of that criminal enterprise." Thus, the lower court was not inconstant in its findings – it consistently held that Appellant went too far

Additionally, Appellant did not just have the Tein Letters sent to one or even two government officials – he sent them and their attachments to at least the following five high ranking officials: Governor DeSantis, Chief Inspector General Miranda Miguel, the Attorney General, Inspector General Bradley Perry, and Chief Financial Officer Jimmy Patronis. That was, by all accounts, "excessive" and therefore even if an absolute privilege did apply it was lost. See Pratt v. Nelson, 2007 UT 41, ¶¶ 40, 46, 164 P.3d 366 (no privilege for statements made during a press conference because the statements were "excessively published," meaning they "were published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation.") So, even if Appellant has only published the contents of the State Court Complaint, he excessively published them, so there is no absolute privilege for that reason as well. Either way, the absolute privilege does not apply.

Finally, Appellant's explanation of Cherdak v. Cottone, No. 2:22-CV-634-SPC-NPM, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023) on page 20

---

by going beyond the simple republishing of the State Court complaint (which may or may not have actually been filed at the time of its publishing, another factual issue).

of his Brief is incomplete. In <u>Cherdak</u>, the *pro se* plaintiff "twice acknowledge[d] in the Complaint that the affidavits were intended for use in litigation." <u>Id.</u> at *6. Based on those admissions, the court found that "It is evident from the face of the Complaint that the affidavits were prepared for use in the case of <u>Cottone v. Cherdak</u>, No. 2022-DR-10-0519 in the Family Court of the Ninth Judicial Circuit in Charleston, South Carolina. To find otherwise would be to ignore Cherdak's own statements, the affidavits, and the email showing Cherdak's receipt of the affidavits in context." <u>Id.</u> So, the court concluded that "is exactly what the litigation privilege was designed to prevent—a party like Cherdak suing witnesses against him for defamation based on the witnesses' testimony against him during litigation." Those facts are nothing like the instant case; the Tein Letters were not prepared for use in litigation and Grippa is not suing a witness for their expected testimony. <u>Cherdak</u> is so inapplicable to the instant case it arguably crosses the line of Appellant making a bad-faith argument.

Appellant's Brief on page 21 then cites <u>Stewart v. Sun Sentinel Co.</u>, 695 So.2d 360, 362 (Fla. 4th DCA 1997) for the proposition "that an attorney who provided a reporter with a notice of claim to a reporter was entitled to absolute immunity for the statements contained within the notice."

23

Attempting to apply that caselaw, he then incorrectly concludes that his conduct amounts to the "functional equivalent of attaching a copy of a complaint to an email." <u>See</u> Appellant's Brief, pages 21 - 24. However, that is not a complete and accurate statement of the law or the facts of this case.

<u>Stewart</u> involved a media defendant – the plaintiff there had to provide a pre-suit copy of the complaint per Fla. Stat. § 768.29. <u>Ball v. D'Lites Enterprises., Inc.</u>, 65 So.2d 637 (Fla. 4th DCA 2011) explained this distinction in <u>Stewart</u>. In <u>Ball</u>, the plaintiffs sued the defendants for breach of contract and fraud related to a licensing agreement between the parties to sell diet-friendly ice cream. <u>Id.</u> at 637. In apparent retaliation, the defendants posted alleged defamatory information on their website, claiming that the plaintiffs' use of the defendants' ice cream products and labeling was a "hoax." <u>Id.</u> When the plaintiffs amended to include defamation claims, the defendants asserted absolute litigation privilege, and the trial court agreed, finding that "the statements on the website were directly related to the litigation and thus were absolutely immune." <u>Id.</u> at 638. The Fourth District disagreed, and reversed the trial court's ruling, stating:

> [T]he website publication in this case was not made in connection with the judicial proceeding. It was not made in the proceedings itself, nor was it made to a participant connected

to the proceeding such as a witness. **Like statements to the newspapers or press conferences, these statements have no part in the judicial proceedings.** Instead, they were made to the world at large through the website and accused the plaintiffs of fraud and perpetrating a hoax on the public. **These statements were not "necessarily preliminary" to judicial proceedings, because unlike either Ange or Stewart the statements were not steps in the judicial process.**

Id. at 641 (emphasis supplied). In making this ruling, the court in Ball specifically referenced its prior holding in Stewart – calling it "one limited context" because that was a required act due to the fact there was a media defendant:

> Our court has ruled contrary to the majority **rule in one limited context**. In Stewart v. Sun Sentinel Co., 695 So.2d 360 (Fla. 4th DCA 1997), we held that an attorney's delivery of a copy of a notice of claim to a reporter, **which notice was a required filing prior to instituting suit**, was protected by absolute immunity.

Id. (emphasis supplied). Thus, Ball court correctly found that the privilege did not apply. Likewise, it does not apply here either.

### B.    Florida's qualified litigation privilege does not apply to or protect the defamatory statements in the Tein Letters.

Appellant's June 21, 2019 letters and attached documents (one of which was the June 21, 2019 complaint in the lawsuit, 2019 CA 002535) are not required steps to Appellant's litigation against R. Paul Mitchell. The State Court Complaint had two counts: one under Fla. Stat. Section

772.103(3) (Florida Civil Remedies for Criminal Practices Act). Section 768.29 did not apply to the case against Mr. Mitchell, so neither does <u>Stewart</u> as explained further below.

> **1.    Florida's qualified litigation privilege does not apply to defamatory statements allegedly relevant or pertinent to the subject of the inquiry.**

The Florida Supreme Court stated that "where the statements do not bear some relation to or connection with <u>the subject of inquiry in the underlying lawsuit</u>, the defendant is not entitled to the benefit of any privilege—either absolute or qualified." <u>DelMonico v. Traynor</u>, 116 So. 3d 1205 (Fla. 2013), emphasis supplied. Here, Appellant's letters went outside the scope of the dispute between Appellant and R. Paul Mitchell; they unnecessarily dragged Grippa's good name through the mud to her potential employers. The State Court Complaint even redacts some people's names, but not Grippa's. <u>See</u> ECF No. 131-2.[11]

---

[11] Moreover, the timing of Grippa's knowledge of the letters is immaterial. <u>See</u> <u>Smith v. Pelham</u>, No. 20-13210, 2021 WL 5863412, at *4 (11th Cir. Dec. 10, 2021) ("To hold that an action cannot be adverse if the employee is unaware of that action is without legal support. And that logic does not make sense when applied in other scenarios.").

Unlike settlement negotiations between potential litigants, which have a direct relationship to the underlying lawsuit, the purpose of the letters to Chief Miguel and Governor DeSantis was separate from the goals of the lawsuit. See, e.g., Pledger v. Burnup & Sims, Inc., 432 So. 2d 1323, 1327 (Fla. 4th DCA 1983) ("We hold that settlement negotiations conducted within the guidelines set forth in Axelrod v. Califano, and the cases cited therein, have the benefit of a qualified privilege."). Thus, the Tien Letters have no qualified privilege.

Nor do cases such as Pomfret v. Atkinson, 137 So. 3d 1161 (Fla. 4th DCA 2014) applicable, as Appellant argues on page 29 of his Brief. Pomfret was about statements made literally during litigation; the court explained that "During the litigation, Atkinson allegedly told Cannavo, among other things, that Pomfret was a 'crook.'" Id. at 1162, emphasis supplied. This statement, that Profret was allegedly a "crook" occurred when Atkinson's "purpose was to tell Cannavo that he should prepare for the upcoming deposition." Id. So, there was a direct relationship with the statement made to the litigation – it occurred as a process in the litigation and as an essential part thereof. These cases are not applicable to the instant case, because the

Tein Letters were not a necessary part of the State Court litigation – the two are completely independent.

Even if there was a direct relationship, "the party making the [qualifiedly privileged] statement [must have] had a duty or a right, in the interests of society, to make the statement." <u>Litman v. Mass. Mut. Life Ins. Co.</u>, 739 F.2d 1549, 1561 (11th Cir. 1984). On this issue, the admission made in Appellant's Reply Memorandum filed in the lower court that "Tein's letters were sent for the primary purpose of asking DeSantis and Miguel to address an alleged conflict of interest in the investigation of [Appellant]" is instructive. <u>See</u> ECF No. 128, p. 11. Appellant was attempting to save himself via the letters to DeSantis and Chief Miguel; he was not making statements in "the interests of society." Further, Appellant's counsel signed them identifying Appellant as "Commissioner Ron Rubin." <u>See</u>, e.g., ECF No. 131-3. Thus, there is no qualified privilege for this reason as well.

### 2. The district court did not err in finding that the qualified litigation privilege does not protect the defamatory statements in the Tein Letters.

Appellant's is an attempt to prove a qualified privilege – an affirmative defense. The elements of that defense are (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak;

(3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner. <u>Thomas v. Tampa Bay Downs, Inc.</u>, 761 So.2d 401, 404 (Fla. 2d DCA 2000); <u>See</u> <u>also</u> <u>Lewis v. Evans</u>, 406 So.2d 489 (Fla. 2d DCA 1981) ("It is called a qualified or conditional privilege, because the libelous statement must be made in good faith, that is, with a good motive, and not for the purpose of harming the subject of the defamation."). Thus, Appellant bears the initial burden of demonstrating the qualified privilege. <u>Randolph v. Beer</u>, 695 So.2d 401, 404 (Fla. 5th DCA 1997).

If Appellant can prove the defamatory statement is protected by a qualified privilege, the burden shifts to Grippa to establish that the privilege was lost through malice or improper purpose. <u>Id.</u> citing <u>Nodar v. Galbreath</u>, 462 So.2d 803, 810 (Fla. 1984). However, Appellant never proved he made the statements at issue "in good faith," not for the purpose of harming Grippa. He also did not prove it was a subject in which he had a duty to speak. Moreover, he did not prove a corresponding interest or duty in all the listeners or readers. He did not prove a proper occasion. Nor did Appellant prove publication properly. In a virtual recognition of these failures, Appellant attempts in footnote 4 of its Brief (page 37) to explain his motives and reasons – without any citations to any record evidence. Obviously, those

"facts" are not permissible on this appeal and any such arguments have been waived.

Making matters worse, and very strangely, Appellant concludes its footnote 4 by stating "Contra Doc. No. 135 at 8–9" – which is the lower court's order denying summary judgment which explains in its footnote 2 exactly how the Appellant's contentions are incorrect. See ECF No. 135 at page 8, footnote 2 (explaining how the letters went well beyond what was supposedly necessary, such as that "Florida's Inspectors General, Florida's Attorney General, and Florida's Chief Financial Officer are not authorized to intervene in such investigations under section § 14.32, Florida Statutes."). For the reasons very articulately explained on pages 8 and 9 of the lower court's summary judgment order,[12] the letters were also sent to numerous

---

[12] The orders Appellant has appealed, especially the lower court's summary judgment order (ECF No. 135), are so articulate and well-reasoned that it seems silly for Grippa simply to copy and paste those for this Court's consideration. However, in an abundance of caution, Grippa hereby reincorporates by reference the arguments, legal citations, and reasoning present in each of the orders Appellate appeals. This includes but not limited to the lower court's Order entered on March 22, 2023, denying Appellant's motion for summary judgment on litigation privilege grounds, and the subsequent order of clarification entered on April 4, 2023 [ECF Nos. 135, 138] and the order terminating his motion for reconsideration, entered on May 24, 2023, and the order denying his motion for an indicative ruling, entered on June 6, 2023. [ECF Nos. 151, 155]. To be very clear, Grippa relies upon the

other Florida officials who did not have the authority under Fla. Stat. § 14.32 to intervene in the Appellant's investigation – yet Appellant still baselessly argues otherwise.

In sum, the Tien letters were broadcast not only to their recipients but copied to numerous other persons in the government where Grippa was seeking employment. There is nothing proper about that occasion or manner. His purpose for doing so was to derail the investigation against him, which ultimately led to his dismissal. This is precisely the type of situation that should be at least resolved by a jury. Glickman v. Potamkin, 454 So.2d 612 (Fla. 3d DCA 1984) ("In a defamation action, the affirmative defenses of truth, good motive and qualified privilege present factual questions for resolution by the jury."). Thus, the lower court was correct in denying summary judgment on any of Appellant's claimed privileges.

> **3.    The district court did not err in finding that a genuine dispute of material fact exists regarding whether Grippa can prove express malice.**

---

well-reasoned arguments and caselaw in ECF Nos. 135, 138, 151 and 155 to the same extent she does those present in the instant Answer Brief – including but not limited to the documents, evidence and pleadings cited in ECF Nos. 135, 138, 151 and 155.

To overcome a qualified privilege, a plaintiff may establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice -- i.e., that the Appellant's primary motive in making the statements was the intent to injure the reputation of the plaintiff. <u>Fridovich v. Fridovich</u>, 598 So. 2d 65, 69 (Fla. 1992); <u>Jarzynka v. St. Thomas Univ. of Law</u>, 310 F. Supp. 2d 1256, 1268 (S.D. Fla.2004). Grippa submitted sufficient evidence that a reasonable jury could find Appellant acted with malice or improper purpose.

By way of example, Grippa complained about Appellant's discriminatory actions and statements to Ryan West, Chief of Staff for Florida's Chief Financial Officer. This incident and additional complaints against Appellant by others resulted in an internal investigation into his behavior. Additionally, while he was being removed, Appellant sent letters to the Governor and the Chief Inspector General accusing Grippa of being part of a criminal enterprise; trying to slander Grippa and convince the apex members of the State of Florida to derail the investigation into him. He had both ill will and hostility towards Grippa because she filed a complaint against him; this hostility led Appellant to allege she was part of a criminal

enterprise. Moreover, malice and improper purpose are also shown by Appellant's excessive publication of the letters, as described above.

Further, Mr. Tein represented Appellant until "December 2020 at least." See ECF No. 131-1. There is no evidence of any retraction of the June 21, 2019 letters; on the contrary, Appellant continued to retain Mr. Tein through much of the litigation between Appellant and R. Paul Mitchell. See ECF No. 131-2. A defamer's post-publication conduct may be relevant to establishing malice at the time of publication. Herbert v. Lando, 441 U.S. 153, 170-171 (1979); see also Showing Constitutional Malice in Media Defamation, Manuel Socias, Fla. B.J., September/October 2018, at 38 (defamer's refusal to retract a defamatory statement after learning it is false "might be relevant in showing recklessness at the time the statement was published," citing Restatement Second of Torts 580A (1977), Comment D).

Likewise, in Mahnke v. Northwest Publications, Inc., 160 N.W. 2d 1 (Minn. 1968), the Minnesota Supreme Court held that a jury may properly consider a defendant's failure to retract defamatory statements as evidence of recklessness. "We think that the failure to retract the defamatory statements," Mahnke stressed, "underscored defendant's reckless attitude as to the consequences of what had been published and that the jury was

33

entitled to take that fact into consideration." <u>See</u> <u>Zerangue v. TSP Newspapers, Inc.</u>, 814 F.2d 1066 (5th Cir. 1987) (refusal to retract an exposed error supports a finding of malice just as a readiness to retract tends to negate malice); <u>Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.</u>, 708 F.2d 944 (5th Cir. 1983) (refusal to retract supports jury finding that defamatory article published with reckless disregard of the truth).

Florida law provides different ways to prove malice; so, Appellant's conduct may be malicious if he was merely reckless. Florida's Standard Jury Instruction on Malice, 406.5, states that "One acts maliciously . . .  against another if he or she does so for the primary purpose of injuring the other, <u>or recklessly and without regard for whether the proceeding is justified, or for any primary purpose</u> except [to bring an offender to justice] [to establish what he or she considers to be a meritorious claim]" (emphasis supplied). Grippa does not have to prove Appellant's primary purpose was to injure Grippa. Here, R. Paul Mitchell prevailed at summary judgment in his case when sued by Appellant. <u>See</u> ECF No. 131-4 and 131-5 (R. Paul Mitchell's summary judgment motion) and (state court order canceling trial). Appellant (who was the plaintiff in his case against Mitchell) did not even

have enough proof of this alleged "conspiracy" to warrant a trial, so his reckless statements are evidence of malice.[13]

Moreover, Appellant's failure to terminate Mr. Tein or retract the statements shows at least reckless disregard for Grippa's reputation. Thus, there is at least a jury issue on whether Appellant had express malice and/or malice in fact when making the statements. See Axelrod v. Califano, 357 So.2d 1048 (Fla. 1st DCA 1978) (when evidence is conflicting as to the existence or non-existence of privilege, there is a mixed question of law and fact, and the fact issue is to be determined by the jury); Pledger v. Burnup & Sims, Inc., 432 So.2d 1323, 1326-28 (Fla. 4th DCA 1983), review denied, 446 So.2d 99 (Fla. 1984) (To overcome a qualified privilege, the injured party must prove express malice or malice in fact).

### C. Even if Appellant is correct, he is complaining about error he invited.

---

[13] The litigation privilege would not prevent the introduction of evidence of malicious prosecution. See Debrincat v. Fischer, 217 So.3d 68 (Fla. 2017) (the litigation privilege did not bar the filing of a malicious prosecution claim that was based upon the act of adding a party defendant to a civil suit).

Appellant heavily relies upon the argument that <u>DelMonico</u> should control the application of the qualified privilege. However, this has not always been the case.

As pointed out in its Order Denying Motion for Indicative Ruling, ECF No. 155, footnote 1, the lower court "also has serious doubts as to whether Appellant's appeal of this Court's application of Florida's qualified privilege is a proper appellate issue, given that Appellant asked this Court to apply the five-factor test that Appellant now argues is incorrect." <u>Compare</u> ECF No. 110 at 11 ("Florida law provides a qualified privilege negating a claim for defamation where the speaker acts in good faith, with an interest to be upheld, through a statement limited in scope to a specific purpose and published on a proper occasion and manner.") <u>with</u> ECF No. 142 at 7 ("[T]he Florida Supreme Court in <u>DelMonico</u> [<u>v. Traynor</u>, 116 So. 3d 1205 (Fla. 2013)], applied the qualified privilege to a statement that was related to an underlying judicial or quasi-judicial proceeding and immediately shifted the burden to the plaintiff to show express malice without applying the five-part test. . . . [T]he Florida Supreme Court's holding in <u>DelMonico</u> should control the application of the qualified privilege."); <u>see also</u> <u>Doe v. Princess Cruise Lines, Ltd.,</u> 657 F.3d 1204 (11th Cir. 2011) ("The invited error doctrine stands

36

for the common sense proposition that someone who invites a court down the primrose path to error should not be heard to complain that the court accepted its invitation and went down that path.").

In <u>Doe</u>, a cruise line, the party moving for arbitration, contended that the trial court erred in denying the cruise line's motion to compel arbitration. <u>Id.</u> The cruise line argued the trial court should not have decided the arbitrability issue but instead should have sent that issue to an arbitrator for decision. <u>Id.</u> This Court called this argument a "non-starter," because the cruise line "asked the district court to decide for itself whether the dispute was subject to arbitration. **Only when the matter was illuminated by the light of an unfavorable decision** from the district court did the cruise line suddenly see that the court ought not have answered the question after all." <u>Id.</u> (emphasis added). The "doctrine stands for the common sense proposition that someone who invites a court down the primrose path to error should not be heard to complain that the court accepted its invitation and went down that path." <u>Id.</u> (citations and quotation marks omitted).

So, even if the Appellant is correct that the lower court made some sort of error regarding the controlling standard, it was invited and not the proper subject of an interlocutory appeal. <u>See also</u> <u>Birmingham Steel Corp. v. Tenn.</u>

Valley Auth., 353 F.3d 1331, 1341 n. 5 (11th Cir.2003) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." (quotation marks omitted)). Only after Appellant saw his arguments were not being accepted did it shift them. Thus, even if the lower court erred, Appellant is truly at fault and cannot maintain this appeal based on the fruits of said error.

## II. Appellant is liable in a defamation lawsuit arising from his attorney's statements made while representing Appellant.

"Professionals, such as lawyers and accountants are always agents of their clients." Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288, 295 (Fla. 3d DCA 2007) (quotation omitted). Despite the obvious agency relationship between Appellant and his attorney, Appellant mischaracterizes the instant case as one based on vicarious liability.

The Florida Supreme Court has long considered it "a well-settled principle of law that an attorney acting within the scope of his authority represents his client and his acts of omission as well as commission are to be regarded as the acts of the person he represents, and therefore his neglect is equivalent to the neglect of the client himself." Griffith v. Inv. Co., 110 So. 271, 271 (Fla. 1926). Moreover, "an attorney serves as agent for his client; the

attorney's acts are the acts of the principal, the client." <u>Andrew H. Boros, P.A., v. Arnold P. Carter, M.D., P.A.</u>, 537 So. 2d 1134, 1135 (Fla. 3d DCA 1989) (citations omitted). So, "when a defendant is represented by counsel, the 'acts of an attorney on behalf of a client will be binding on the client even though done without consulting him and even against the client's wishes.'" <u>Sims v. State</u>, 867 So. 2d 1208, 1210 (Fla. 3d DCA 2004) (quotation omitted).

### a.    Appellant Speaks Through Counsel

"It is well-established that an agent's authority may be inferred from acts, conduct and other circumstances." <u>Bd. of Tr. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, Inc.</u>, 622 F.3d 1335 (11th Cir. 2010). Here, the text of the June 21, 2019 letters shows Appellant was speaking through his Attorney, Michael Tein:

- <u>We</u> respectfully request that you assume jurisdiction. . .

- The grounds for <u>our request</u>…

- Please contact me if you would like copies of our evidence <u>or to interview [Appellant]</u>.

- <u>We</u> respectfully request that you direct. . .

- To the contrary, <u>our</u> point is…

- In a lawsuit filed today, <u>[Appellant] details</u> improper. . .

(emphasis supplied). Thus, not only is his attorney his agent, but the actual language of the letters shows that they contain Appellant's personal assertion. There is at least a jury issue that Michael Tein's letters show his authority to speak for Appellant.[14]

### b.    Appellant's Method of Operation

> "Ms. Mattox, I have lawyers for a reason. I ask lawyers what to do, and then they advise me on what to do. So that would be the process that I would follow."

See ECF No. 124-4, Appellant's Dep. 66:6-9. Appellant's "process" of using attorneys was further enlightened in the non-party production by his consultant, Seth Gordon.

Seth Gordon produced numerous emails showing how Appellant works with his attorneys on communications similar in time and context to those of the instant case. For example, on May 30, 2019, Appellant emailed

---

[14] As mentioned supra but bears repeating, the lower court specifically relied on many of these documents, and why Appellant left them out seems nefarious. See, e.g., ECF No. 135 (the Order entered on March 22, 2023, denying Appellant's motion for summary judgment) which references 124-13 (Join Motion for Redaction of Personal Identifying Information, with attachments), and 124-14 (email from Appellant dated May 29, 2019, with copy to Seth Gordon). The exclusion of these documents appears not to be accidental – they show the control and standard operating procedures Appellant had over his attorneys (a key issue in his instant appeal).

his attorney about a press release; therein, Appellant suggests including Grippa's "criminal acts" of public corruption, encouraging the Inspector General to investigate them. The allegations in that May 30, 2019 email exchange are strikingly close in nature to those made in the instant case. Thus, the email exchange proves Appellant's efforts to use his attorneys to publish slanderous comments about Grippa.

Other emails are similar, and show constant approval by Appellant of such letters:

- Ron – my apologies. Please advise if you approve this statement:"; Appellant's response: "OK by me."

- "I think this is ok Has Ron approved the new language?" [Response]: "Please don't send this letter – I think we should discuss the ending….").

Other emails show how Appellant had a unique manner of having his attorneys send such letters. Even Seth Gordon noted how odd that was - saying it "baffled" him and that "no one had ever "suggested that such communication had to come from an attorney." There is at least a triable issue of fact regarding whether Appellant was using his attorneys as a false layer to try to protect him from statements he knew were slanderous.

### c.    The Crime of Slander v. a Civil Action for Slander

Appellant's argument that either he or his attorney must have committed a crime by defaming Grippa fails to recognize the difference between criminal and common law defamation. The differences were explained by the Southern District in <u>Turner v. Charter Sch. USA, Inc.</u>, 18-24005-CIV, 2020 WL 620392, at *1 (S.D. Fla. Jan. 14, 2020):

> Plaintiff's claim is based upon Florida Statutes § 836.01, (ECF No. 112 at Count I), **which is a criminal statute that does not give rise to a civil cause of action.** See Fla. Stat. § 836.01 ("Any person convicted of the publication of a libel shall be guilty of a misdemeanor of the first degree...."); Murthy v. N. Sinha Corp, 644 So.2d 983, 986 (Fla. 1994) ("In general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability."). . . .

(emphasis supplied). Likewise, the elements of a civil defamation claim only include negligence – not a showing of criminal intent:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) <u>fault amounting at least to negligence</u> on the part of the publisher;

and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

42

Thomas v. Jacksonville Television, Inc., 699 So.2d 800, 803-04 (Fla. 1st DCA 1997) (emphasis supplied). Thus, unlike a criminal act's *mens rea* requirement, a civil action for defamation only requires a showing of negligence. At its heart, Appellant's argument is that he could never be responsible for his lawyer's conduct would simply permit him to send slanderous messages through an attorney with impunity.

### d.    No Proof of a Limited Scope of Representation

Appellant never proved a limited scope of Mr. Tein's representation. On the contrary, the scope appears to be quite broad – including bringing defamation lawsuits on his behalf. See ECF No. 124-16 at 10. Mr. Tein represented Appellant until "December 2020 at least." See ECF No. 131-1. That is a year and a half after the June 21, 2019 letters. Thus, Appellant's apparent claims that Mr. Tein went rogue are disproven by the sole fact that Appellant continued to employ him for a year and a half after the fact. The details and underlying facts of Tein's letters (and attached State Court Complaint) could only have come from Appellant himself.

Moreover, Appellant admitted in the lower court's proceedings that there are no documents supporting a limitation on the scope of Mr. Tein's representation. See ECF No. 131-1 ("Even if the Court ignores the timeliness

of your motion, there is nothing to compel here."). If Appellant and Mr. Tein wish to enter into an attorney-client relationship where Mr. Tein has carte blanche over all aspects of Appellant's life, Appellant cannot later complain that Mr. Tein acted with that authority. ECF No. 131-1 also clarifies that Appellant "does not argue in his motion for summary judgment (or in any defense of the claim) that he agreed with Mr. Tein to limit the scope of Mr. Tein's representation."

Instead, Appellant argued to the lower court that his attorney (Mr. Tein) potentially committed a crime that he ethically was prohibited from doing. However, that Mr. Tein continued to represent Appellant until December 2020 shows that Appellant either approved of his conduct or deliberately ignored it. Similarly, Appellant's claim at the lower court that Mr. Tein potentially committed a crime, thus alleviating Appellant from civil liability, is simply preposterous, as also shown by Appellant's contradictory arguments on the subject. Compare Appellant's Reply at p. 6 ("Conferring, and even working closely with one's counsel is a good idea. . .") with p. 14 (". . . there is no record evidence that [Appellant] directed Tein, let alone communicated with Tein in any way about the letters."). Nor did Appellant

did not apparently report Mr. Tein to the police or the Florida Bar, at least there is no record evidence of such.

Finally, several Florida decisions have held that the Florida Rules of Professional Conduct cannot insulate a party from civil liability. For example, Rule 4-5.6 (which prohibits attorneys from making agreements restricting the right to practice law following the termination of an employment relationship) or Rule 4-1.5 (which prohibits attorneys from entering into an agreement to collect excessive fees) may not be used to invalidate or render void civil obligations. See Harvard Farms, Inc. v. National Cas. Co., 617 So.2d 400 (Fla. 3d DCA 1993) (quoting preamble to the Rules of Professional Conduct, court notes that the rules only create an ethical responsibility in attorneys), disapproved of on other grounds in Chandris, S.A. v. Yanakakis, 668 So. 2d 180, 185 (Fla. 1995); Lee v. Florida Dep't of Ins. and Treasurer, 586 So.2d 1185 (Fla. 1st DCA 1991) (Rule 4-5.6 may not be used to invalidate, or as a defense to, a private contract action); Mary J. Kaufman, P.A. v. Davis & Meadows, P.A., 600 So.2d 1208 (Fla. 1st DCA 1992) (attorney cannot rely upon ethical Rule 4-1.5 to avoid his contractual obligations pursuant to fee-splitting agreement). Likewise, the Florida Rules of Professional Conduct would not insulate Appellant from

45

civil liability. In sum, Appellant is liable for what he either specifically directed or permitted his lawyers to do on his behalf.

## CONCLUSION

In Florida, no interlocutory appeal is possible after the denial of a motion for summary judgment is based on litigation privilege; the same result applies to a qualified privilege. Plus, here, factual issues such as the presence of malice also prevent it. Moreover, even if there was an error Appellant invited it. In sum, the Appellant wrongfully appealed this matter, unreasonably multiplied these proceedings, and resulted in unnecessary costs, fees, and delays. In sum, the case should be remanded to the District Court for further proceedings, and Grippa should be awarded her attorneys' fees and costs for the wrongful appeal.

Dated this 17th day of January 2024.

Respectfully submitted,

*/s/ Marie A. Mattox*
Marie A. Mattox
Florida Bar No. 739685
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)
*Counsel for Plaintiff-Appellee, Grippa*

47

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains less than 13,000 words (no more than 10,930 words, even excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Local Rule 32-4). This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated this 17th day of January 2024.

*/s/  Marie A. Mattox*
Marie A. Mattox
*Counsel for Plaintiff-Appellee, Grippa*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of this Answer Brief and accompanying Appendix have been sent via electronic filing to all attorneys of record this 17th day of January 2024.

<u>*/s/ Marie A. Mattox*</u>
Marie A. Mattox